UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO.

04-12037-WGY

| | |
|---|---|
| DEBORAH M. BOURQUE<br>　　Plaintiff | )<br>)<br>) |
| V. | )<br>)<br>) |
| METROPOLITAN LIFE INSURANCE<br>　COMPANY<br>AIRBORNE EXPRESS LONG TERM<br>　DISABILITY PLAN<br>AIRBORNE EXPRESS, INC.<br>　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT WITH JURY DEMAND

### Parties

1. Plaintiff is Deborah M. Bourque ("Ms. Bourque") an individual having a usual place of residence at Somerville, Middlesex County, Massachusetts.

2. Defendant is Metropolitan Life Insurance Company ("MetLife") an insurance subsidiary of Metropolitan Life, Inc., One Madison Avenue, New York, New York, doing business in the Commonwealth of Massachusetts, and the insurer of the Airborne Express Long Term Disability Plan.

3. Defendant is Airborne Express Long Term Disability Plan ("Plan") of which the plan administrator was Airborne Freight Corporation.

4. Defendant is Airborne Express, Inc., the successor to Airborne Freight Corporation, effective March 1, 2001. Airborne Express, Inc., is a Delaware corporation having a usual place of business at 1200 South Pine Island Road, Suite 600 Plantation, Florida, which is also the corporate headquarters of DHL Americas. Airborne Express, Inc., has designated CT Corporation, 101 Federal Street, Boston, Suffolk County, Massachusetts as its agent for service of process.

### Jurisdiction and Venue

5. This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132. Venue is proper before this Court, because the plaintiff resides in the eastern district of Massachusetts.

### Facts Common to All Counts

6. At all times material hereto, Ms. Bourque had been employed as a full time employee of of Airborne Express, Inc., or its subsidiaries.

7. At all times relevant hereto, Ms. Bourque was a beneficiary under the Airborne Express Long Term Disability Plan.

8. The Plan is an "employee welfare benefit plan," as defined by ERISA, 29 U.S.C. § 1002(1), and may be sued under ERISA as an entity, pursuant to 29 U.S.C. § 1132(d)(1).

9. MetLife insures the Plan and is jointly liable for payment of benefits under the Plan.

10. Ms. Bourque is a "participant" in the Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

11. Airborne Express, Inc., as the successor to Airborne Freight Corporation is the plan sponsor and plan administrator within the meaning of ERISA, 29 U.S.C. § 1002(16)(B), and a fiduciary with respect to the Plan within the meaning of ERISA 29 U.S.C. § 1002(21)(A).

12. Ms. Bourque was employed as a secretary/administrator by Airborne Express, Inc., within the Commonwealth of Massachusetts.

13. In 1999, Ms. Bourque was diagnosed with an unusual form of cancer lymphoma (NHL) - Angioimmunoblastic T-Cell (AILD). In August 2000, the disease had been diagnosed as being at Stage III.

14. In order to treat this disease, Ms. Bourque underwent an allogenic bone marrow transplant.

15. As a result of the transplant Ms. Bourque, developed a severe case of chronic vs graft host disease.

16. As a result of having developed a severe case of chronic vs graft host disease, she has not be able to resume her prior occupation as an administrative assistant, or secretary, and cannot work in any occupation as defined under the Plan and MetLife insurance policy.

17. Ms. Bourque remains under the care of Dr. Kenneth Miller, M.D., the Director of Clinical Hematology, Beth Israel Deaconess Medical Center, and a faculty member of Harvard Medical School. Dr. Miller, M.D., is one of the world's leading specialist in his field of allogenic bone marrow transplants.

18. At all times material hereto, and since at least August 9, 1999, Ms. Bourque has been "totally disabled" within the meaning of the terms of the Plan, and has been entitled under the Plan to be paid both short-term disability and long-term disability benefits, and continues to be disabled to date.

19. Since August 9, 1999, and after the elimination period, and up until October 8, 2003, MetLife and the Plan paid benefits to Ms. Bourque under both the "own occupation" and "any occupation" provision of the Plan.

20. Ms. Bourque's base benefit from MetLife and under the Plan was $1837.00.

21. At the suggestion of MetLife, Ms. Bourque applied for benefits under the Social Security Administration disability insurance program.

22. The United States Social Security Administration determined, effective August 9, 1999, that Ms. Bourque has been disabled and remains disabled from gainful employment, and as such pays monthly benefits to her under the Social Security Disability Income. At the time of the determination, Ms. Bourque was awarded monthly benefits in the amount of $1158.00.

23. MetLife received the benefit of "off-set" of the amount that the Social Security Administration pays to Ms. Bourque which is credited against the base benefit paid by the Plan and MetLife, thereby reducing the obligation of MetLife by the amount of the payment Ms. Bourque receives from the United States Social Security Administration each month.

24. In or about October 8, 2003, MetLife, for unlawful reasons, terminated benefit payments to Ms. Bourque.

25. In order to support its benefit denial, MetLife relied on the opinion of Dr. Gary Philip Greenhood, M.D., who performed a cursory and limited record review, and discounted Dr. Kenneth Miller, M.D.'s opinion regarding occupational impairment, and the treatment of severe chronic vs graft host disease.

26. MetLife represented to Ms. Bourque that Dr. Greenhood, M.D., was an "independent" reviewer, and that his opinion was not biased.

27. MetLife did not disclose to Ms. Bourque, among other facts that: (1) Dr. Greenhood, M.D., was not independent reviewer, but had been paid substantial compensation by MetLife, including but not limited to, working for MetLife for extended periods of time, at least twenty five (25) hours a week, at the rate of one hundred and fifty dollars ($150.00) per hour reviewing claim files for MetLife; (2) Dr. Greenhood, M.D., had been employed by various insurers and insurance consulting businesses, and appeared not to have practice clinical medicine since 1992 when he earned an MBA degree.

28. Ms. Bourque timely filed an appeal of the benefits denial.

29. By letter dated July 29, 2004, MetLife wrote to Ms. Bourque's counsel stating that it would need an additional forty five (45) days to review Ms. Bourque's appeal, however, MetLife failed to follow the specific requirements of the United States Secretary of Labor regulations set forth at 29 C.F.R. § 2560.503-1, which require an explanation as to the "special circumstances" which requires additional time.

30. Ms. Bourque has exhausted her administrative remedies under the Plan, insurance policy and under ERISA, because the Plan and MetLife have failed to render a decision no later than ninety (90) days after MetLife received Ms. Bourque's most recent appeal.

31. To the extent that MetLife had been granted discretionary authority under the Plan, both the Plan and MetLife abused that discretion, for many reasons, including its failure to render a decision no later than ninety (90) days after receipt of the appeal, and in accordance with the United States Secretary of Labor regulations set forth at 29 C.F.R. § 2560.503-1.

## Count I

### Benefits Due From MetLife and the Plan under ERISA, 29 U.S.C.§ 1132

32. Ms. Bourque realleges paragraphs 1 through 31 and incorporates the same by reference as if fully set forth herein again.

33. As the *de facto* plan administrator and benefit payor, MetLife is operating under a conflict of interest, and to the extent that MetLife contends that its decision to terminate benefits under the discretionary standard of review, that contention must be denied, and MetLife's decision must be reviewed under a *de novo* standard of review.

34. To the extent that MetLife had been granted discretionary authority under the Plan, both MetLife and the Plan abused that discretion, for reasons including, the failure to render a decision no later than ninety (90) days after receipt of the appeal, and in accordance with the United States Department of Labor regulations set forth at 29 C.F.R. § 2560.503-1, and engaging in an inherently unfair claim process, by adding terms to the Plan and insurance policy that do not exist, such as requiring "objective evidence" to support disability.

35. MetLife's decision to terminate Ms. Bourque's benefits under the Plan are wrongful whether determined under *de novo* standard, or the arbitrary and capricious standard, or the heightened scrutiny standard of review.

36. Ms. Bourque fulfilled all of the requirements for obtaining benefits under the Plan and the insurance policy of MetLife.

37. As a result of MetLife's and the Plan's refusal and failure to pay to Ms. Bourque disability benefits provided to her and to those participants who are totally disabled, Ms. Bourque is entitled to relief against MetLife and the Plan to recover benefits due to her under the terms of the Plan and insurance policy, to enforce her rights to benefits under the Plan and to clarify her rights to future benefits under the Plan and insurance policy, pursuant to 29 U.S.C. § 1132 (a)(1)(B), (2) and (3).

## Count II

## Breach of Contract Against MetLife

38. Ms. Bourque realleges paragraphs 1 through 37 and incorporates the same by reference as if fully set forth herein again.

39. Ms. Bourque is a direct, or intended third party beneficiary of an insurance contract between Airborne Express, Inc., Airborne Freight Corporation and MetLife.

40. MetLife breached that insurance contract, and caused Ms. Bourque to suffer damages.

### Count III

### Failure to Timely Provide Plan Document and SPD

41. Ms. Bourque realleges paragraphs 1 through 40 and incorporates the same by reference as if fully set forth herein again.

42. By Federal Express delivery dated March 16, 2004, counsel to Deborah Bourque made written request for the Summary Plan Description and Plan documents relating to the Airborne Express Long Term Disability Plan and MetLife. A duplicate letter was sent by certified mail return receipt requested to MetLife who advised counsel to Deborah M. Bourque to obtain the documents from the Airborne Express Long Term Disability Plan through the administrator Airborne Freight Corporation. A copy of the request letter is attached herewith as EXHIBIT A.

43. Airborne Express, Inc., did not produce documents certain documents, until its counsel sent those documents to Deborah Bourque's counsel on or about May 20, 2004. A copy of the letter is attached herewith as EXHIBIT B.

44. MetLife refused to produce documents even though it controlled administration of the Plan. To date, it appears that MetLife has not produced all "other instruments under which the plan is operated," including the *Met Procedures and Policy for Processing Claim.*

45. Pursuant to 29 U.S.C. § 1024(b)(4) the plan administrator shall, whether *de facto* or actual, upon written request of a participant, furnish a copy of the "other instruments under which the plan is operated," and a summary plan description.

46. Both Airborne Express, Inc., and MetLife, failed to provide the requested documents within thirty days, are a subject to a penalty of as described in 29 U.S.C. § 1132( c)(1) of up to $110/per day beginning on the thirty-first (31st) day.

WHEREFORE, plaintiff Deborah M. Bourque demands relief and judgment, jointly and severally, against the defendants as follows:

1. In an amount of damages to be determined by this Court, or jury, plus pre-judgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise.
2. Injunctive relief declaring the rights and duties of the plaintiff and defendants with respect to past benefits owed to the plaintiff, and future benefits to be paid to the plaintiff.
3. For an order precluding a remand of this matter for further determination by the defendants regarding the termination of benefits.
4. For a penalty in the amount of $110.00 per day for each day after April 16, 2004, that the defendants failed to timely deliver "other instruments under which the plan is operated" and a summary plan description.

5.  For such other relief as this Court deems just and proper.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.**

DEBORAH M. BOURQUE
By Her Attorneys,

Date: September 21, 2004

Jonathan M. Feigenbaum, Esq.
B.B.O. N#546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787

L:\DBOR001\complaint.wpd

**EXHIBIT A**

# PHILLIPS & ANGLEY
ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(617) 367-8787

JEFFREY J. PHILLIPS, P.C.
JEFFREY T. ANGLEY, P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
BRANDY J. WITYAK

*ALSO ADMITTED IN DC AND CA

TELECOPIER (617) 227-8992

March 16, 2004

Cynthia P. Eunice
LTD Case Manager
Metropolitan Life Insurance Company
P.O. Box 14590
Lexington, KY 40511-4590

FAX: 866-690-1264
**CERTIFIED MAIL**
**No. 7002 2030 0002 2444 8048**

Scott M. Northcutt
Executive Vice President Human Resources
DHL Americas
1200 South Pine Island Road, Suite 600
Plantation, FL 33324

**FEDERAL EXPRESS**

Claimant            : Deborah M. Bourque
Plan Administrator  : DHL Americas f/k/a Airborne Express (Airborne)
Claims Administrator: MetLifeDisability
Policy Holder       : DHL Americas f/k/a Airborne Express
Report No.          : 0074632
Claim Number        : 740001310307

Dear Ms. Eunice and Mr. Northcutt:

Please be advise that I am counsel to Deborah M. Bourque. Ms. Bourque had been employed by Airborne which is now merged into DHL Americas.

Ms. Bourque intends to submit a comprehensive appeal in connection with MetLife's adverse benefit decision set forth in your letter of October 8, 2003. The one hundred and eighty (180) day period for submitting appeals does not begin to run until such time that MetLife discloses all information that is required under ERISA and the accompanying Department of Labor Regulations. Ms. Bourque would like to submit her appeal as soon as possible, however, MetLife must first disclose all of the information that is required by law.

1

In the interim, I am requesting that MetLife begin paying benefits to Ms. Bourque immediately. As you are aware, she is suffering from a life threatening illness, and is unable to work in her occupation at this time. Ms. Bourque's medical condition has not improved during the time period that MetLife was paying benefits to her. Although I have not had an opportunity to review the actual plan documents governing Ms. Bourque's entitlement as a beneficiary under the plan, I am relatively certain that the documents do not require that she provide "objective clinical information" that support restrictions and limitations as set forth on page 3 of your October 8, 2003 letter. Many a court has rejected a demand that a claimant furnish objective medical evidence, or the like in order to obtain benefits. Cook v. Liberty Life Assurance Co. Of Boston, 320 F.3d 11, 21 (1st Cir. 2003)

MetLife is required to state with specificity the reasons for denial, and MetLife is required to state with specificity the nature of the materials that Ms. Bourque should submit in order to appeal the adverse benefit decision. ERISA requires that plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133. "First, notice can provide the member with information necessary for him or her to know what he or she must do to obtain the benefit. Second, if the HMO persists in its denial, notice can enable the member effectively to protest that decision." Juliano v. Health Maintenance Organization of New Jersey, Inc., 221 F.3d 279, 287 (2d Cir.2000).

In MetLife's adverse benefit decision letter dated October 8, 2003 reference is made to a review of some of Ms. Bourque's records by a Physician File review (something I interpret to mean a nurse or medical doctor consultant or employee), however, nothing is disclosed regarding that person's qualifications, explicit findings, methodology, or even a list of materials reviewed. ERISA's implementing regulations require that disability denials that rely on "an internal rule, guideline, protocol, or other similar criterion" must set forth the specific criterion relied upon, or state that a copy will be "provided free of charge to the claimant upon request." 29 C.F.R. § 2560.503-1(g)(v)(A). That statement is missing from the October 8, 2003 letter, and the lack of such a statement is a per se violation of the Department of Labor regulations. Cook v. New York Times Disability Plan, 2004 WL 203111 (S.D.N.Y. January 30, 2004)). Please provide the information as required under the regulations.

Please consider this letter a formal request under 29 U.S.C. § 1132(c) to obtain copies of:

1. The Summary Plan Description *and* the plan documents under which Ms. Bourque is a beneficiary and participant of which Aiborne, is the administrator and beneficiary under an insurance contract with MetLife.

2. Proof that the most recent Summary Plan Description for the Aiborne Short Term and Long Term Disability Plans had been tendered to Ms. Bourque prior to the time that he sought benefits.

2

3.    Ms. Bourque seeks copies of all pertinent documents on which MetLife made its adverse benefit decision. MetLife should be aware, that under United States Department of Labor regulations, 29 CFR 2560.503-1(g) "pertinent documents" are:

"In the case of an adverse benefit determination, the notification shall set forth, in a manner calculated to be understood by the claimant--
(1) The specific reason or reasons for the adverse determination;
(2) Reference to the specific plan provisions on which the benefit determination is based;
(3) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of ther section;
(4) A statement describing any voluntary appeal procedures offered by the plan and the claimant's right to obtain the information about such procedures described in paragraph (c)(3)(iv) of ther section, and a statement of the claimant's right to bring an action under section 502(a) of the Act; and
(5) In the case of a group health plan or a plan providing disability benefits--
(i) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the claimant upon request;
(ii) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances,
or a statement that such explanation will be provided free of charge upon request; and
iii) The following statement: "You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.
(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."
29 CFR § 2560.503-1(g).

In addition, documents are considered relevant under these regulations, if:
"(m) Definitions. The following terms shall have the meaning ascribed to such terms in there paragraph (m) whenever such term is used in ther section:

3

(8) A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
(i) Was relied upon in making the benefit determination; (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of ther section in making the benefit determination; or
(iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." 29 CFR § 2560.503-1

4. A copy of the MetLife Claims Manual, and each document of the like that assists MetLife in evaluating claims such as Ms. Bourque.

5. A complete copy of Ms. Bourque's file in MetLife's possession. Ther must include all documents and internal MetLife notes, correspondence, e-mail and other data maintained in each data base or on hard copy. The materials that were tendered to me in your letter of February 11, 2004 appear to be incomplete.

6. All notices that MetLife is required to provide under ERISA and the regulations as well as the specific requirements of the applicable Aiborne Short Term and Long Term Disability Plan.

7. Would you also provide a description of all additional material or information necessary for Ms. Bourque to perfect the claim and an explanation of why such material or information is necessary.

Under section 502 of the Employee Retirement Income Security Act of 1974 as amended, the failure to provide a Summary Plan Description, and all other documents required to be disclosed, within thirty days of a written request subjects the violator to a discretionary $110.00 a day penalty for non-compliance, plus, in some instances attorneys' fees and related costs.

Please feel free to contact me should you have any questions.

Thank you for your courtesy and cooperation with ther matter.

Very truly yours,

Jonathan M. Feigenbaum

JMF/hs
cc: Deborah M. Bourque
L:\LITG\DBOR001\metlife.l3.wpd

4

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits. DBOR 001

1. Article Addressed to:

Cynthia P. Eunice
LTD Case Manager
Metropolitan Life Ins. Co.
P.O. Box 14590
Lexington, KY 40511-4590

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article (Tran:

PS For

ACPRI-03-P-4081

**EXHIBIT B**

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Craig Bitman**
212-309-7190
cbitman@morganlewis.com
**VIA DHL Express Courier**

May 20, 2004

Jonathan M. Feigenbaum, Esq.
Phillips & Angley
One Bowdoin Square
Boston, MA 02114

Re:   Deborah M. Bourque

Dear Mr. Feigenbaum,

Your letter of March 16, 2004 to Scott M. Northcutt, of DHL Americas has been referred to us.

In your letter you request a copy of the MetLife Disability plan document and the summary plan description ("SPD") for that plan. I am enclosing both the SPD and the MetLife Disability Certificate. Please note, I have been informed by DHL, that Airborne employees received their annual benefits book (SPD) during open enrollment, and that each year the books were sent out directly to each covered employee at their work location. According to DHL personnel, Ms. Bourque would have received her 1999 benefits book (SPD) during the open enrollment period in October 1998.

Please direct any additional correspondence to DHL Express either to me or to:

>   Joshua B. Frank
>   Senior Legal Counsel
>   DHL Express
>   1200 South Pine Island Road, Suite 600
>   Plantation FL 33324

Sincerely,

Craig Bitman

DBOR/001

c:   Joshua B. Frank, Esq.
    Pamela Hudson, Metropolitan Life Insurance Company

1-NY/1782308.1