UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 04-12037-WGY

DEBORAH M. BOURQUE )
    Plaintiff )
  )
V. )
  )
METROPOLITAN LIFE INSURANCE )
  COMPANY )
AIRBORNE EXPRESS LONG TERM )
DISABILITY PLAN )
AIRBORNE EXPRESS, INC. )
    Defendants )

## FIRST AMENDED COMPLAINT WITH JURY DEMAND

### Parties

1.    Plaintiff is Deborah M. Bourque ("Ms. Bourque") an individual having a usual place of residence at Somerville, Middlesex County, Massachusetts.

2.    Defendant is Metropolitan Life Insurance Company ("MetLife") an insurance subsidiary of Metropolitan Life, Inc., One Madison Avenue, New York, New York, doing business in the Commonwealth of Massachusetts, and the insurer of the Airborne Express Long Term Disability Plan.

3.    Defendant is Airborne Express Long Term Disability Plan ("Plan") of which the plan administrator was Airborne Freight Corporation.

4.    Defendant is Airborne Express, Inc., the successor to Airborne Freight Corporation, effective March 1, 2001. Airborne Express, Inc., is a Delaware corporation having a usual place of business at 1200 South Pine Island Road, Suite 600 Plantation, Florida, which is also the corporate headquarters of DHL Americas. Airborne Express, Inc., has designated CT Corporation, 101 Federal Street, Boston, Suffolk County, Massachusetts as its agent for service of process.

## Jurisdiction and Venue

5.    This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132. Venue is proper before this Court, because the plaintiff resides in the eastern district of Massachusetts.

## Facts Common to All Counts

6.    At all times material hereto, Ms. Bourque had been employed as a full time employee of of Airborne Express, Inc., or its subsidiaries.

7.    At all times relevant hereto, Ms. Bourque was a beneficiary under the Airborne Express Long Term Disability Plan.

8.    The Plan is an "employee welfare benefit plan," as defined by ERISA, 29 U.S.C. § 1002(1), and may be sued under ERISA as an entity, pursuant to 29 U.S.C. § 1132(d)(1).

9.    MetLife insures the Plan and is jointly liable for payment of benefits under the Plan.

10.    Ms. Bourque is a "participant" in the Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

11. Airborne Express, Inc., as the successor to Airborne Freight Corporation is the plan sponsor and plan administrator within the meaning of ERISA, 29 U.S.C. § 1002(16)(B), and a fiduciary with respect to the Plan within the meaning of ERISA 29 U.S.C. § 1002(21)(A).

12. Ms. Bourque was employed as a secretary/administrator by Airborne Express, Inc., within the Commonwealth of Massachusetts.

13. In 1999, Ms. Bourque was diagnosed with an unusual form of cancer lymphoma (NHL) - Angioimmunoblastic T-Cell (AILD). In August 2000, the disease had been diagnosed as being at Stage III.

14. In order to treat this disease, Ms. Bourque underwent an allogenic bone marrow transplant.

15. As a result of the transplant Ms. Bourque, developed a severe case of chronic vs graft host disease.

16. As a result of having developed a severe case of chronic vs graft host disease, she has not be able to resume her prior occupation as an administrative assistant, or secretary, and cannot work in any occupation as defined under the Plan and MetLife insurance policy.

17. Ms. Bourque remains under the care of Dr. Kenneth Miller, M.D., the Director of Clinical Hematology, Beth Israel Deaconess Medical Center, and a faculty member of Harvard Medical School. Dr. Miller, M.D., is one of the world's leading specialist in his field of allogenic bone marrow transplants.

18.  At all times material hereto, and since at least August 9, 1999, Ms. Bourque has been "totally disabled" within the meaning of the terms of the Plan, and has been entitled under the Plan to be paid both short-term disability and long-term disability benefits, and continues to be disabled to date.

19.  Since August 9, 1999, and after the elimination period, and up until October 8, 2003, MetLife and the Plan paid benefits to Ms. Bourque under both the "own occupation" and "any occupation" provision of the Plan.

20.  Ms. Bourque's base benefit from MetLife and under the Plan was $1837.00.

21.  At the suggestion of MetLife, Ms. Bourque applied for benefits under the Social Security Administration disability insurance program.

22.  The United States Social Security Administration determined, effective August 9, 1999, that Ms. Bourque has been disabled and remains disabled from gainful employment, and as such pays monthly benefits to her under the Social Security Disability Income. At the time of the determination, Ms. Bourque was awarded monthly benefits in the amount of $1158.00.

23.  MetLife received the benefit of "off-set" of the amount that the Social Security Administration pays to Ms. Bourque which is credited against the base benefit paid by the Plan and MetLife, thereby reducing the obligation of MetLife by the amount of the payment Ms. Bourque receives from the United States Social Security Administration each month.

24.  In or about October 8, 2003, MetLife, for unlawful reasons, terminated benefit payments to Ms. Bourque.

25.    In order to support its benefit denial, MetLife relied on the opinion of Dr. Gary Philip Greenhood, M.D., who performed a cursory and limited record review, and discounted Dr. Kenneth Miller, M.D.'s opinion regarding occupational impairment, and the treatment of severe chronic vs graft host disease.

26.    MetLife represented to Ms. Bourque that Dr. Greenhood, M.D., was an "independent" reviewer, and that his opinion was not biased.

27.    MetLife did not disclose to Ms. Bourque, among other facts that: (1) Dr. Greenhood, M.D., was not independent reviewer, but had been paid substantial compensation by MetLife, including but not limited to, working for MetLife for extended periods of time, at least twenty five (25) hours a week, at the rate of one hundred and fifty dollars ($150.00) per hour reviewing claim files for MetLife; (2) Dr. Greenhood, M.D., had been employed by various insurers and insurance consulting businesses, and appeared not to have practice clinical medicine since 1992 when he earned an MBA degree.

28.    Ms. Bourque timely filed an appeal of the benefits denial.

29.    By letter dated July 29, 2004, MetLife wrote to Ms. Bourque's counsel stating that it would need an additional forty five (45) days to review Ms. Bourque's appeal, however, MetLife  failed to follow the specific requirements of the United States Secretary of Labor regulations set forth at 29 C.F.R. § 2560.503-1, which require an explanation as to the "special circumstances" which requires additional time.

30.    Ms. Bourque has exhausted her administrative remedies under the Plan, insurance policy and under ERISA, because the Plan and MetLife have failed to render a decision no later than ninety (90) days after MetLife received Ms. Bourque's most recent appeal.

31.   MetLife has not properly been granted authority to make discretionary benefit decisions by either the plan sponsor, plan administrator or the Massachusetts Division of Insurance. To the extent that MetLife contends that it has been granted authority to make discretionary benefit decisions, that authority was self granted by MetLife alone.

32.   The insurance policy under which MetLife paid benefits to Ms. Bourque was not approved by the Massachusetts Division of Insurance, permitting the use of a clause granting discretionary authority to MetLife to pay benefits as it determined.

33.   To the extent that MetLife had been granted discretionary authority under the Plan, both the Plan and MetLife abused that discretion, for many reasons, including its failure to render a decision no later than ninety (90) days after receipt of the appeal, and in accordance with the United States Secretary of Labor regulations set forth at 29 C.F.R. § 2560.503-1.

## Count I

### Benefits Due From MetLife and the
### Plan under ERISA, 29 U.S.C.§ 1132

34.   Ms. Bourque realleges paragraphs 1 through 33 and incorporates the same by reference as if fully set forth herein again.

35.   As the *de facto* plan administrator and benefit payor, MetLife is operating under a conflict of interest, and to the extent that MetLife contends that its decision to terminate benefits under the discretionary standard of review, that contention must be denied, and MetLife's decision must be reviewed under a *de novo* standard of review.

36.    To the extent that MetLife had been granted discretionary authority under the Plan, both MetLife and the Plan abused that discretion, for reasons including, the failure to render a decision no later than ninety (90) days after receipt of the appeal , and in accordance with the United States Department of Labor regulations set forth at 29 C.F.R. § 2560.503-1, and engaging in an inherently unfair claim process, by adding terms to the Plan and insurance policy that do not exist, such as requiring "objective evidence" to support disability.

37.    MetLife's decision to terminate Ms. Bourque's benefits under the Plan are wrongful whether determined under *de novo* standard, or the arbitrary and capricious standard, or the heightened scrutiny standard of review.

38.    Ms. Bourque fulfilled all of the requirements for obtaining benefits under the Plan and the insurance policy of MetLife.

39.    As a result of MetLife's and the Plan's refusal and failure to pay to Ms. Bourque disability benefits provided to her and to those participants who are totally disabled, Ms. Bourque is entitled to relief against MetLife and the Plan to recover benefits due to her under the terms of the Plan and insurance policy, to enforce her rights to benefits under the Plan and to clarify her rights to future benefits under the Plan and insurance policy, pursuant to 29 U.S.C. § 1132 (a)(1)(B), (2) and (3).

## Count II

### Breach of Contract Against MetLife

40.  Ms. Bourque realleges paragraphs 1 through 39 and incorporates the same by reference as if fully set forth herein again.

41.  Ms. Bourque is a direct, or intended third party beneficiary of an insurance contract between Airborne Express, Inc., Airborne Freight Corporation and MetLife.

42.  MetLife breached that insurance contract, and caused Ms. Bourque to suffer damages.

## Count III

### Failure to Timely Provide Plan Document and SPD

43.  Ms. Bourque realleges paragraphs 1 through 42 and incorporates the same by reference as if fully set forth herein again.

44.  By Federal Express delivery dated March 16, 2004, counsel to Deborah Bourque made written request for the Summary Plan Description and Plan documents relating to the Airborne Express Long Term Disability Plan and MetLife. A duplicate letter was sent by certified mail return receipt requested to MetLife who advised counsel to Deborah M. Bourque to obtain the documents from the Airborne Express Long Term Disability Plan through the administrator Airborne Freight Corporation. A copy of the request letter is attached herewith as EXHIBIT A.

45.  Airborne Express, Inc., did not produce documents certain documents, until its counsel sent those documents to Deborah Bourque's counsel on or about May 20, 2004. A copy of the letter is attached herewith as EXHIBIT B.

46.   MetLife refused to produce documents even though it controlled administration of the
      Plan. To date, it appears that MetLife has not produced all "other instruments under
      which the plan is operated," including the *Met Procedures and Policy for Processing
      Claim.*

47.   Pursuant to 29 U.S.C. § 1024(b)(4) the plan administrator shall, whether *de facto* or
      actual, upon written request of a participant, furnish a copy of the "other instruments
      under which the plan is operated," and a summary plan description.

48.   Both Airborne Express, Inc., and MetLife, failed to provide the requested documents
      within thirty days, are a subject to a penalty of as described in 29 U.S.C. § 1132( c)(1) of
      up to $110/per day beginning on the thirty-first (31st) day.

WHEREFORE, plaintiff Deborah M. Bourque demands relief and judgment, jointly and severally, against the defendants as follows:

1.    In an amount of damages to be determined by this Court, or jury, plus pre-judgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise.

2.    Injunctive relief declaring the rights and duties of the plaintiff and defendants with respect to past benefits owed to the plaintiff, and future benefits to be paid to the plaintiff.

3.    For an order precluding a remand of this matter for further determination by the defendants regarding the termination of benefits.

4.    For a penalty in the amount of $110.00 per day for each day after April 16, 2004, that the defendants failed to timely deliver "other instruments under which the plan is operated" and a summary plan description.

5.    For such other relief as this Court deems just and proper.


**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.**

DEBORAH M. BOURQUE
By Her Attorneys,

Date: 9/27/04

Jonathan M. Fergenbaum, Esq.
R.B.O. N#546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787

L:\Dbor002\complaint.amended.wpd