UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEBORAH M. BOURQUE,

    Plaintiff,

                                        Civil Action No.: 04-12037-WGY

v.

METROPOLITAN LIFE INSURANCE
COMPANY, AIRBORNE EXPRESS LONG
TERM DISABILITY PLAN, AIRBORNE,
EXPRESS, INC.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR
FOCUSED PRE-TRIAL DISCOVERY RELATING TO
THE SCOPE OF THE ADMINISTRATIVE RECORD**

NOW COMES the plaintiff, Deborah Bourque ("Bourque"), and submits this memorandum in support of her motion for focused pre-trial discovery relating to the scope of the administrative record. The purpose of the motion is to discover, the scope of documents that comprise the administrative record relating to the basis for Metropolitan Life Insurance Company's ("MetLife") termination of Bourque's long-term disability benefits ("LTD benefits"), and to demonstrate to this Court that MetLife and its medical reviewers are infected with conflict and bias against those seeking benefits.

Bourque seeks to discover claims manuals, instructional and training documents available to MetLife's claims adjusters. These documents should have been disclosed during the internal appeal process and should be disclosed now as part of the record for review before this Court.

The United States Department of Labor regulations require such disclosure, and so does the First Circuit. <u>Glista v. Unum Life Insurance Company of America</u>, 378 F.3d 113, 123 (1st Cir. 2004); <u>Palmiotti v. Metropolitan Life Insurance Company</u>, 2005 WL 552017 (March 9, 2005, S.D.N.Y.)(ordering MetLife to produce without a protective order its claim guidelines and the like in an ERISA long term benefits case).

Bourque seeks to discover information between MetLife and Network Medical Review-Elite Physician, Ltd ("NMR"), and Drs. Gary Philip Greenhood, MD and Steven Feagin, MD In the present case, MetLife relied on Dr. Greenhood, MD, to support its benefit termination. Then, during the internal appeal, it appears that MetLife relied on Dr. Steven Feagin, MD. From discovery in other ERISA long term disability cases, it is known that Dr. Gary Philip Greenhood, reviews substantial numbers of files for MetLife - 1536 files reviewed in year 2003 alone.

There is substantial reason to believe that NMR, and the doctors that it regularly hires such as Dr. Gary Philip Greenhood, M.D., do not provide unbiased reviews when retained by insurers, and a number of courts have thus ordered discovery regarding the relationship between NMR and insurers. NMR has been criticized for exhibiting bias by the Sixth Circuit and Seventh Circuit. <u>Darland v. Fortis Benefits Ins. Co.</u>, 317 F.3d 516, 527-531 (6th Cir. 2003); <u>Ladd v. ITT Corp.</u>, 148 F.3d 753 (7th Cir. 1998).

In addition, Bourque intends to demonstrate, that to the extent that MetLife claims that it is entitled to deferential (*arbitrary and capricious* standard) rather than *de novo* review of its claim's termination, that delegation of discretion was not made in accordance with the statutory requirements of ERISA.

**I.**             **SUMMARY OF THE ARGUMENT**

The interrogatories and document requests upon which Bourque seeks information are substantially similar to discovery requests permitted in other ERISA long term disability cases, <u>Palmiotti v. Metropolitan Life Insurance Company</u>, 2005 WL 552017 (March 9, 2005, S.D.N.Y.), and <u>Clark v. Metropolitan Life Insurance Company</u> et al, CV04-1236-VAP, United States District Court for the Central District of California. A copy of the <u>Clark</u> discovery order is attached. [EXHIBIT A].

**II.**             **THE PLAINTIFF'S DISCOVERY REQUEST**

The Plaintiff is seeking limited discovery as follows:

**INTERROGATORIES**

1.      State the number of times that Defendant MetLife have utilized the services of the Defendant medical reviewers, Dr. Gary Philip Greenhood, MD, and Dr. Steven Feagin, MD, who have reviewed the plaintiff's claim for the Defendant.

2.      State the amounts paid to the Defendant MetLife medical reviewers, Dr. Gary Philip Greenhood, MD, and Dr. Steven Feagin, MD, who reviewed plaintiff's claim, and the amounts paid to each of those medical reviewers in the three (3) years preceding the review of the Plaintiff's claim.

3.      In the event that the medical reviewers, Dr. Gary Philip Greenhood, MD, and Dr. Steven Feagin, MD, were subcontracted by another agency (i.e. Network Medical Review, Elite Physicians) working on behalf of Defendant MetLife, the amounts paid by Defendant MetLife to the subcontracting company in the three (3) years preceding the review of the Plaintiff's claim.

## DOCUMENT REQUESTS

1.    The Plaintiff requests that the MetLife produce all claims manuals, "Best Practices Manual and MetLife's Claims Management Guidelines," (referenced in Cohen v. MetLife) "MetLife's Claim Management Guidelines( referenced in Martin v. Polaroid), MetLife Disability Durational Guidelines (referenced in Palmiotti v. MetLife) instructional and training documents available to MetLife's claims adjusters from October 1999 (the date that Bourque was first granted benefits) through the current time.

2.    All written communications between Defendant MetLife and the Plan Sponsor, Airborne Express, Inc., demonstrating that the Plan Sponsor, prior to the purchase of the subject Defendant group insurance policy, affirmatively requested language be included in the Defendant group insurance policy, delegating discretion upon Defendant to interpret the Plan terms and/or to determine eligibility for disability benefits.

3.  In the event that no documents exist in response to the previous document request, all documentation in written or electronic form, establishing how the language delegating discretion upon Defendant to interpret Plan terms and/or to determine eligibility for disability benefits came to be included in the subject group insurance policy.

4.  Correspondence between MetLife to Network Medical Review or Elite Physicians regarding general procedures (not particular to any one claim) that Network Medical Review or Elite Physicians should employ when reviewing claims records as requested by Defendant.

5.  All documents transmitted between Defendant MetLife and Dr. Gary Philip Greenhood, MD concerning Bourque.

6.  All documents transmitted between Defendant MetLife and Dr. Steven Feagin, MD concerning Bourque.

## THE RELEVANT LAW

### A.    Discovery of Claims Manuals, Guidelines and The Like Is Proper.

In ERISA benefits cases insurers always argue that discovery is not permitted. This simple is not a correct statement of the law[1]. ERISA is devoid of language prohibiting discovery in

---

[1] Glista v. Unum Life Insurance Company of America, 378 F.3d 113, 123-124 (1st Cir. 2004) (Training materials and guidelines were discoverable and should have been admitted as part of the complete administrative record). *See also*, Featherstone v. Metropolitan Life Insurance Company, 223 F.R.D. 647 (N.D. Fla. 2004)(permitting

benefit denial cases. *See generally*, 29 U.S.C. § 1001, *et. seq.* If the documents exist, and are not even relied on making a benefit decision, the Department of Labor considers such documents relevant and subject to disclosure. Glista v. Unum Life Insurance Company of America, 378 F.3d 113, 123-124 (1st Cir. 2004)(The DOL regulations reflect the US Department of Labor's expert judgment that benefits of providing claims types guidelines or manuals outweigh the potential burden on plan administrators.).

Based on the dictates of the Department of Labor regulations, an administrative record is incomplete if it does not contain the claims manual, training manual, and guidelines that are used to instruct the insurance company's claim employees as to how to evaluate claims and render decisions. Bourque sought these documents during the internal appeal prior to commencing litigation. [B00795[2]]. MetLife refused to produce those documents during the internal review process.

Only ten days ago in Palmiotti v. Metropolitan Life Insurance Company, 2005 WL 552017 (March 9, 2005, S.D.N.Y.), MetLife was ordered to turn over its claims manuals and guidelines, without a protective order, in an ERISA long term benefits disability case. The Court stated in pertinent part:

> In order to satisfy the statutory requirements to provide a fair claims procedure, an employee benefit program must provide to a claimant

---

plaintiff to depose two of MetLife's claims employees, under a plan where MetLife had been granted discretionary review, to determine if the self interest of MetLife in denying benefits had infected the claims process, including an inquiry into the competency of MetLife's claims personnel in rendering an adverse disability benefit decision).

[2]See EXHIBIT B. BQ 00795 refers to document number on the "Partial Record for Judicial Review" filed by MetLife with the Court on March 11, 2005.

5

      upon request "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). The regulations go on to define as relevant any document that "[d]emonstrates compliance with the administrative process and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(iii). And paragraph (b)(5) requires that "[t]he claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). In short, the adequacy of claims processing procedures is relevant to whether the denial of a claim is arbitrary and capricious, and, because the procedures are relevant, claimants are entitled to have access to them. Under these circumstances, the Claims Manual is required to be made widely available outside MetLife; the company's efforts to maintain secrecy are necessarily futile; and the claim of competitive harm is negated because each of MetLife's competitors is subject to the same regulations.

The reason that these documents must be turned over is to assure fairness in the review process. Typically in evaluating LTD claims, insurance company employees[3] are making medical evaluations and occupational impairment decisions, when they do not have the same education, training or experience, that would be required of an expert witness under *Daubert* and its progeny. Those employees would not be permitted to testify in Court regarding their medical or impairment opinions of insurance claimants. Because insurers are often granted the deference of trustees when making decisions under ERISA, the Department of Labor requires transparency

---

[3]See EXHIBIT C which is a partial transcript of a deposition of Rosemary Harmon of MetLife in <u>Palmiotti v. MetLife</u>, where it is disclosed that an employee having a 2 year degree in paralegal studies was permitted to make medical and impairment decisions to deny a person suffering from Multiple Sclerosis, from receiving long term disability benefits under a MetLife group insurance policy.

during claims evaluation process. To safeguard against arbitrary decisions, claims manuals, training manuals and guidelines are exceedingly relevant to assure fairness in the claims process. For these reason, MetLife's claims manuals, training manuals, and guidelines that are used to instruct MetLife's employees on how to evaluate long term disability claims must be disclosed as part of the administrative record on review. Without access to such documents, a plaintiff is left to guess as to whether a decision was arbitrary.

In addition to the Palmiotti decision, in Cohen v. Metropolitan Life Ins. Co. 2003 WL 1563349, (S.D.N.Y.), the Court ordered that MetLife produce its Best Practices Manual and MetLife's Claims Management Guideline." In Featherstone v. Metropolitan Life Insurance Company, 223 F.R.D. 647 (N.D. Fla. 2004), the Court allowed the plaintiff to depose two of MetLife's claims employees, under an ERISA plan where MetLife had been granted discretionary review, to determine if the self interest of MetLife in denying benefits had infected the claims process, including an inquiry into the competency of MetLife's claims personnel in rendering an adverse disability benefit decision. It also appears that during discovery MetLife voluntarily, or by order, turned over its "Claim Management Guidelines" in a case pending in this Judicial District. Martin v. Polaroid Corp. Long Term Disability Plan, 2004 WL 1305661 (D.Mass.).

**B.    Discovery of Payments and Instructions Between MetLife and Network Medical Review - Elite Physicians, Ltd. And Its Doctors Is Appropriate.**

Bourque seeks information regarding the selection of medical doctors who reviewed who claim, and found her not to be disabled. In this instance, Bourque is not on a "fishing expedition" as discovery in other cases, has already yielded information that Dr. Gary Philip Greenhood, MD, (who opined that Bourque was not occupationally disabled), reviews substantial cases for

MetLife; 1536 in year 2003 alone. See information MetLife disclosed in Winkler v. MetLife.

[EXHIBIT D]. It appears that Dr. Greenhood, MD, has an on-going significant relationship with

MetLife, and is most probably not an unbiased file reviewer[4]; bias is relevant, as Bourque seeks

review with "more bite." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir.1998).

In Doe v. Travelers Insurance Company, 167 F.3d 53, 57 (1st Cir. 1999), the Court noted

that information sought by Bourque is an appropriate subject for discovery:

> Finding out just what information Travelers had and why it acted as it did depends
> upon the medical notes provided to it, the exchange of correspondence, and the
> recollections of oral conversations; this in turn can require discovery and even fact
> finding by the district court. Id. at 57.

The Seventh Circuit examined the relationship between NMR and MetLife. In Ladd v.

ITT Industries, Inc., 1997 WL 769460 (N.D. Ill. 1997), the District Court ordered MetLife, to

respond to discovery. In its opinion, the Court stated in part:

> On October 6, 1997, the court granted Ladd's motion to compel and ordered
> defendants to comply with all outstanding discovery by the close of the business
> on October 7. Defendants provided only partial responses. Pl. Resp. Ex. 3
> (Affidavit of Joshua Henderson ¶ 3). Ladd filed a motion for a rule to show cause
> on October 8. Pl. Resp. Ex. 3. Ladd argued that defendants' failure to respond to
> interrogatories 8 and 9 and document requests 6 and 7 required the imposition of
> sanctions pursuant to Rule 37(b)(2). *Id.* (Motion at ¶ 2). According to Ladd, the
> discovery requests were designed to induce production of information to
> substantiate an argument that MetLife's independent medical reviewer, Network
> Medical Review, was biased and prejudiced. *Id.* Ladd urged the court to sanction
> defendants' non-compliance with the order compelling discovery by barring

---

[4]MetLife has represented to Judge Gorton that Dr. Greenhood, MD, is an independent physician. Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 214 (1st Cir. 2004)( Second, MetLife focuses on the report of Dr. Gary Greenhood, an *independent medical consultant* who reviewed Gannon's file...). Had the District Court, or the First Circuit known that Dr. Greenhood did 1536 reviews for MetLife in 2003, it is probably that the Courts would have be less likely to believe that he is an *independent medical consultant.*

defendants from relying on evidence provided by Network Medical Review or, in the alternative, to deem the Network Medical Review reports as tainted by bias and prejudice. *Id.* (Motion at ¶ 5).

Discovery yielded that in course of less than two years Network Medical Review performed over 3,200 reviews, and had received over $1,200,000.00 in consideration for its services. *See,* Ladd v. ITT Industries, Inc., 1997 WL 769460 (N.D. Ill. 1997). Although the District Court found for the defendant insurer, the Seventh Circuit *reversed* and entered judgment for the plaintiff. Ladd v. ITT Corp., 148 F.3d 753 (7th Cir. 1998). Following Ladd, in Darland v. Fortis Benefits Ins. Co., 317 F.3d 516, 527-531 (6th Cir. 2003), the Sixth Circuit accurately revealed the insurer's self-interested motivation in using Network Medical Review's doctors as reviewers:

> "In this case, Fortis' ultimate disability determination was based upon the 'peer review' panels selected by Network Medical Review Company, which Fortis had contracted to assess Darland's claim. As the plan administrator, Fortis had a 'clear incentive' to contract with a company whose medical experts were inclined to find in its favor that Darland was not entitled to continued LTD benefits. Accordingly, the existence of an apparent conflict of interest must be taken into account as a 'factor in determining whether there is an abuse of discretion.'" Id., 527-528.

In Winkler v. Metropolitan Life Insurance Company, the United States District Court for the Southern District of New York, C.A., 03-9656, ordered MetLife to disclose information about its non-employee physicians that it used to deny Mr. Winkler's claim. The response from MetLife provided information that Dr. Greenhood, MD, had reviewed 1536 cases for MetLife in 2003(Dr. Greenhood, MD, concluded that Bourque was not disabled). [EXHIBIT D]. In Wright v. Metropolitan Life Insurance Company, MetLife disclosed that it retained Dr. Greenhood, MD, through Network Medical Review - Elite Physicians. [EXHIBIT E].

9

Attached hereto as EXHIBIT E is a list that contains 51 cases in which Network Medical Review/Elite Physicians were involved. In virtually every case, the NMR doctor found that the claimant was not disabled.

**C. How MetLife Obtained Discretionary Review Authority is Subject to Discovery.**

MetLife is sure to argue to this Court that its claims denial must be reviewed under the discretionary (*arbitrary and capricious*) standard of review. A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan ," in which case an abuse of discretion standard is applied.

Bourque incorporates by reference, her arguments set forth in Part II, of her Memorandum of Plaintiff in Support of Motion that the Denial of Benefits Claim by Metropolitan Life Insurance Company is Subject to "De Novo" Standard of Review filed this same date. Based on those reasons, Bourque should be entitled to conduct limited discovery on this issue.

## CONCLUSION

For the foregoing reasons, the plaintiff urges this Court to permit discovery as requested in her motion.

DEBORAH BOURQUE

/s/ *Jonathan M. Feigenbaum*

Jonathan M. Feigenbaum, Esq.
B.B.O. #546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787

Date: March 19, 2005
L:\DBOR002\MEMO.DISCOVERY.WPD