UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04 – 12037 - WGY

_____
                                    )
DEBORAH M. BOURQUE                  )
         Plaintiff                  )
                                    )
v.                                  )
                                    )
METROPOLITAN LIFE                   )
INSURANCE COMPANY,                  )
         Defendant                  )
_____)

**OPPOSITION TO PLAINTIFF'S MOTION THAT THE DENIAL OF BENEFITS CLAIM BY METROPOLITAN LIFE INSURANCE COMPANY IS SUBJECT TO THE "DE NOVO" STANDARD OF REVIEW**

Defendant Metropolitan Life Insurance Company ("MetLife") opposes the plaintiff's motion to change the standard of review set forth in the Plan for MetLife's benefits determination from arbitrary and capricious to a de novo review. The Plan documents clearly provide notice that the claim administrator's decision is to be subject to an arbitrary and capricious review. Further, the continuing dialogue between MetLife and plaintiff's counsel about plaintiff's condition prior to plaintiff filing suit does not warrant a de novo review.

**SUMMARY OF FACTS [1]**

The plaintiff, Deborah M. Bourque (Ms. Bourque) became employed as a secretary/administrator by Airborne Express, Inc. ("Airborne Express") on or about February 16, 1998. Ms. Bourque was a participant in The Airborne Express Long Term Disability Plan (the

---

[1] For purposes of this Opposition only, MetLife adopts certain allegations contained in Ms. Bourque's complaint. In addition, the fact section includes facts that can be discerned from the documents that were filed in this action by MetLife as the Record for Judicial Review on March 11, 2005. Reference numbers refer to the Bates-stamped numbers in the volumes of documents filed with the Court. The Summary of Facts contained in this Opposition is repeated in the opposition of MetLife to plaintiff's motion for discovery, for the convenience of the Court.

"Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, ("ERISA").  The Plan provides certain long term disability benefits to eligible participants, and was funded by Metropolitan Life Insurance Company ("MetLife") under a group insurance policy issued to Airborne Express. MetLife was the Claims Administrator of the Plan.

The Airborne Express Summary Plan Description, which describes the long term disability plan, provides:

### AUTHORITY OF FIDUCIARIES

In carrying out their respective responsibilities under the Plans, the Plan Administrator, the Claims Administrator (i.e., those responsible for reviewing claims to determine eligibility for payment under the terms of the plan), the insurance companies, and other Plan fiduciaries shall have full and absolute discretionary authority to administer and interpret the terms of the Plans and to determine eligibility for and entitlement to Plan benefits.  Any interpretation or determination made under such discretionary authority will be given full force and effect and shall be binding on the participants, employees, their dependents and all interested parties, unless it can be shown that the interpretation or determination was arbitrary and capricious.

**Note**:  The Life, AD&D, and Long Term Disability benefits described in this summary plan description (SPD) are provided under insurance contracts with Metropolitan Life Insurance Company . . . (BQ 01517)

The Certificate of Insurance for Long Term Disability issued by MetLife to Airborne Express describes the benefits under the Plan.  It also provides:

### DISCRETIONARY AUTHORITY OF PLAN ADMINISTRATOR AND OTHER PLAN FIDUCIARIES

In carrying out their respective responsibilities under the plan, the plan administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious. (BQ01514)

2

For the convenience of the Court, a copy of a letter from an attorney for Airborne Express to plaintiff's counsel with sections of the Summary Plan Description and MetLife Disability Certificate ("Policy") are attached to this opposition as Exhibit A. (BQ 01488 -01518).

In or about 1999, Ms. Bourque was diagnosed with an unusual form of cancer lymphoma (Non-Hodgkin's Lymphoma). She stopped work on or about August 9, 1999, and a claim for long-term disability benefits was submitted to MetLife. On or about February 21, 2000, Ms. Bourque's claim for long term disability benefits was approved by MetLife, and benefits became payable as of February 5, 2000. (BQ 00169).

On or about October 8, 2003, Ms. Bourque's long term disability benefits were withdrawn by MetLife. (BQ 01227 – 9). The withdrawal was based upon a determination that Ms. Bourque no longer met the definition of disability in the Plan.[2] MetLife concluded that "The available medical documentation on file does not support objective clinical information that supports your current restrictions and limitations that would prevent you from performing the duties of any occupation including your occupation as Administrative Assistant." (BQ 01229) The denial letter noted that Ms. Bourque had completed a Personal Profile Statement on March 25, 2003, that stated, among other things, that she was "currently seeking employment and going on job interviews…driving…and use the computer on a daily basis…." The denial letter also referred to a Physician File review and Labor Market Survey that had been conducted by MetLife. In addition, the denial letter provided Ms. Bourque with information as to how to appeal the decision to deny her claim within 180 days, or by April 8, 2004 (adding 3 days for delivery of the letter).

---

[2] Although plaintiff emphasizes that she receives benefits from the Social Security Administration, such determinations are not binding on disability insurers because the criteria for determining eligibility are substantively different. Pari-Fasano v. ITT Hartford Life and Accident Insurance Co., 230 F. 3d 415, 420 (1st Cir. 2000).

3

After a number of communications with Ms. Bourque's attorney, including providing the administrative claim file, MetLife provided Ms. Bourque with an additional 45 days to appeal the denial. (BQ 01455 -63). Ms. Bourque requested that MetLife reinstate her long term disability benefits on June 18, 2004 ("Appeal"). (BQ 00804). In that letter, Ms. Bourque's attorney stated that "Ms. Bourque reserves the right to further supplement this appeal. Until such time that all documents are produced, the 180 day time period for appeals does not run." (BQ 00805). Ms. Bourque's attorney submitted additional medical information with her Appeal. In addition, on July 15, 2004, Ms. Bourque's attorney provided another medical report in support of the Appeal. (BQ 00833-70). On July 29, 2004, MetLife informed Ms. Bourque's attorney that it needed additional time to review the Appeal because he had submitted additional medical information (BQ 00872). MetLife referred the Appeal and medical information to Steven J. Feagin, M.D., for a Physician Consultant Review. (BQ 01043).

Apparently, Ms. Bourque's attorney did not receive the July 29, 2004 letter, because on August 10, 2004, he wrote and asked that MetLife reinstate benefits immediately because the notification of benefit determination following the Appeal had not been received. (BQ 00874). MetLife again informed Ms. Bourque's attorney that it needed additional time to review the Appeal because of the additional medical information by letter of August 12, 2004. (BQ 00879). In response, on August 12, 2004, Ms. Bourque's attorney requested that he be provided an opportunity "to respond in writing prior to MetLife before 'closing the record' and refusing to accept written commentary." (BQ 01048). On September 21, 2004, before receiving any decision on the Appeal, and in spite of the continuing dialogue between MetLife and Ms. Bourque regarding the claim, plaintiff filed her complaint for benefits under the Plan.

4

The plaintiff filed her complaint against MetLife, Airborne Express, Inc. and Airborne Express Long Term Disability Plan (the "Plan). Airborne Express, Inc. and the Plan were dismissed by Stipulation of Dismissal on March 31, 2005.

## **ARGUMENT**

I. **THE PLAN DOCUMENTS UNEQUIVOCALLY PROVIDE THAT METLIFE'S DECISION WILL BE SUBJECT TO REVIEW UNDER AN ARBITRARY AND CAPRICIOUS STANDARD.**

MetLife is the claim administrator and the insurer of the Plan. The Summary Plan Description, and the terms of the Plan set forth in the MetLife Disability Policy attached to the plaintiff's motion, clearly demonstrate that MetLife has discretionary authority to determine eligibility for benefits under the Plan. Plaintiff recognizes, as she must, that the language in the MetLife Disability Policy setting forth the terms of the Plan, requires that the Court apply an arbitrary and capricious standard of review to the benefits decision.

Indeed, the language in the MetLife Disability Policy is identical to language that has been held in the First Circuit to vest discretionary authority in MetLife to determine eligibility for benefits. Lopes v. Metropolitan Life Insurance Company, 332 F. 3d 1, 4 (1st Cir. 2003). Further, where as here, the terms of the Plan are stated in a group policy, a delegation of authority to the claims administrator in the group policy is sufficient. See Sanders v. Unum Life Insurance Company of America, et al., 346 F. Supp. 2d 955, 957 (N.D. Ill. 2004) (language contained in group policy issued by Unum sufficient to delegate authority to administrator and apply safe harbor language). The policy put the Airborne Express employees on notice that under the Plan the claims administrator in its discretion would determine who is eligible to receive benefits.

The Summary Plan Description for the Plan is even more specific in delegating authority to MetLife. In the Summary Plan Description, the participants are notified that the **"Claims Administrator (i.e., those responsible for reviewing claims to determine eligibility for payment under the terms of the plan), the insurance companies, and other Plan fiduciaries** shall have full and absolute discretionary authority to administer and interpret the terms of the Plans and to determine eligibility for and entitlement to Plan benefits." (Emphasis added). Discretionary authority was clearly delegated to MetLife to determine the eligibility for benefits under both the Summary Plan Description and the terms of the Plan contained in the group insurance policy. The relevant plan documents grant discretionary authority to MetLife, and expressly delegate such authority to MetLife, meeting the requirements of Rodriguez-Abreu v. Chase Manhattan Bank, 986 F. 2d 580 (1st Cir. 1993). In contrast to Rodriguez, the relevant plan documents expressly delegate discretionary authority to MetLife. The participants were on notice that this would be the standard of review. Discretionary clauses are permitted in disability insurance contracts. This was the standard that Airborne Express adopted when it drafted the Summary Plan Description, and obtained MetLife's insurance for the long term disability plan.

Further, to the extent the plaintiff seems to be seeking some additional statement regarding the delegation of authority, such information would likely be controlled by Airborne Express. The plaintiff has not requested any discovery from Airborne Express. Instead, plaintiff has stipulated to its dismissal. In the unlikely event that this Court determines that the clear language in the Summary Plan Description and policy are insufficient to delegate authority to the claims administrator and insurer to permit an arbitrary and capricious standard of review, MetLife respectfully requests the opportunity to obtain documents or provide an affidavit from Airborne Express to respond to plaintiff's argument regarding the standard of review.

## II. THE CONTINUING DIALOGUE BETWEEN PLAINTIFF'S COUNSEL AND METLIFE ABOUT PLAINTIFF'S CONDITION SHOULD NOT OPERATE TO AVOID THE DEFERENCE TO BE PROVIDED TO METLIFE'S DECISION.

The plaintiff's claim was terminated on October 8, 2003. An appeal was filed on June 18, 2004 ("Appeal"). On July 29, 2004, MetLife notified plaintiff's counsel that it needed an additional forty five (45) days to respond because the plaintiff had submitted new medical evidence on July 16, 2004. On August 12, 2004, MetLife again informed plaintiff's counsel that it required an additional forty five (45) days to respond to plaintiff's Appeal. In response, also on August 12, 2004, plaintiff's counsel requested an opportunity to file additional material. Irrespective of this continuing dialogue, and before an Appeal decision was rendered by MetLife, plaintiff filed suit on September 21, 2004, forty (40) days after her counsel's last communication with MetLife, and fifty four (54) days after MetLife notified plaintiff's counsel on July 29, 2004 that it needed an additional forty five (45) days to respond to the Appeal. Although plaintiff's counsel had asked to submit more material to MetLife, the plaintiff filed suit before the administrative appeal was exhausted. Plaintiff's filing of a lawsuit before the Appeal was decided should not change the standard of review.

The good faith attempt by MetLife to consider and receive additional information from plaintiff's counsel regarding Bourque's disability prior to rendering a decision resulting in a nine (9) day lapse is in marked contrast to the facts in Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan, 349 F. 3d 1098 (9th Cir. 2003), *petition for cert. filed,* 72 U.S.L.W. 3553 (2004). Jebian filed his appeal in November of 1998. Although the Hewlett-Packard Plan provided that the claim was deemed denied on review if there was no response within sixty (60) days, in March of 1999, one hundred and nineteen (119) days after receiving the appeal, the plan administrator wrote to Jebian, indicating that the appeal was

7

pending.  The plan administrator again wrote to Jebian in June of 1999, indicating that the appeal was still pending while they were waiting for some medical records.  Jebian finally filed his complaint on September 29, 1999, some three months after he had last heard from the plan administrator, and ten months after initially filing his appeal.  Against this backdrop, the Court held that the denial was to be reviewed de novo.  In doing so, the Court stated, "While deference may be due to a plan administrator that is engaged in a good faith attempt to comply with its deadlines when they lapse, this is not such a case."  Id., at 1103.  In contrast, MetLife was engaged in such an attempt.  Further, plaintiff's counsel himself requested that the administrative record remain open to permit him to submit information before a final decision was rendered.  (BQ 01048).  MetLife's willingness to engage in a dialogue with plaintiff's counsel, and his unilateral decision to file suit, should not change the deference to be afforded MetLife's denial decision.

If the Court determines that MetLife failed to comply with procedural requirements contained in ERISA, the appropriate remedy is to remand the case to the claim administrator for further prompt or expedited proceedings – not to change the standard of review.  Wertheim v. Hartford Life Insurance Co., 268 F. Supp. 2d 643 (E.D. Va. 2003) (finding majority opinion in Jebian "unpersuasive," "bad law," and "bad policy" in determining that procedural irregularity led to extreme measure of applying non-deferential de novo standard of review).  The Court in Wertheim reasoned that remand "fosters the strong policy favoring the internal administrative resolution of ERISA claims and ensures that plaintiff receives all of the procedural protections to which he is entitled under the regulations."  Any harm to the plaintiff due to additional delay could be "fully mitigated through the application of retroactive benefits."  Id. 664-665.  The Court held that the "correct view" is that the "mere presence of a procedural irregularity is not

enough to strip a plan administrator of the deferential standard of review." Id. at 664, citing McGarrah v. Hartford Life Ins. Co., 235 F. 3d 1026, 1031 (8th Cir 2000); Southern Farm Bureau Life Ins. Co. v. Moore, 993 F. 2d 98, 101 (5th Cir. 1993); Daniel v. Eaton Corp., 839 F. 2d 263, 267 (6th Cir. 1988). MetLife's good faith attempt to consider plaintiff's Appeal, including additional medical information, and her counsel's request to keep the administrative record open, should not result in the change of standard of review.

## CONCLUSION

The Plan documents in this case clearly provide that MetLife's determination of plaintiff's eligibility for benefits is subject to an arbitrary and capricious standard of review. MetLife's consideration of materials submitted by plaintiff's counsel should not change this standard. MetLife respectfully requests that this Court deny plaintiff's motion to subject the denial of benefits claim to a de novo review. Alternatively, MetLife respectfully requests that this Court remand the case to MetLife for a determination of the Appeal, and issuance of a formal written decision on the Appeal subject to the deferential standard of review required by the Plan.

METROPOLITAN LIFE INSURANCE
COMPANY
By its attorneys,

/s/Constance M. McGrane
James F. Kavanaugh, Jr. BBO# 262360
Constance M. McGrane BBO# 546745
CONN KAVANAUGH ROSENTHAL PEISCH
 & FORD, LLP
Ten Post Office Square
Boston, MA 02109
617-482-8200

Dated: April 4, 2005

223702.1

9