UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04 – 12037 - WGY

_____
                                    )
DEBORAH M. BOURQUE                  )
            Plaintiff               )
                                    )
v.                                  )
                                    )
METROPOLITAN LIFE                   )
INSURANCE COMPANY,                  )
            Defendant               )
_____)

**OPPOSITION TO PLAINTIFF'S MOTION FOR FOCUSED PRE-TRIAL DISCOVERY
RELATING TO THE SCOPE OF THE ADMINISTRATIVE RECORD**

Defendant Metropolitan Life Insurance Company ("MetLife") opposes the plaintiff's motion for "focused" pre-trial discovery. MetLife has produced the administrative record that was the basis for its decision to terminate the plaintiff's benefits. No further discovery or expansion of the judicial record is required to resolve the dispute. The requested discovery will prohibit an efficient and expeditious of the case, is irrelevant to the sole issue in this case, and is overly burdensome. Accordingly, the plaintiff's motion should be denied.

1

## SUMMARY OF FACTS [1]

The plaintiff, Deborah M. Bourque (Ms. Bourque) became employed as a secretary/administrator by Airborne Express, Inc. ("Airborne Express") on or about February 16, 1998. Ms. Bourque was a participant in The Airborne Express Long Term Disability Plan (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"). The Plan provides certain long term disability benefits to eligible participants, and was funded by Metropolitan Life Insurance Company ("MetLife") under a group insurance policy issued to Airborne Express. MetLife was the Claims Administrator of the Plan.

The Airborne Express Summary Plan Description, which describes the long term disability plan, provides:

### AUTHORITY OF FIDUCIARIES

In carrying out their respective responsibilities under the Plans, the Plan Administrator, the Claims Administrator (i.e., those responsible for reviewing claims to determine eligibility for payment under the terms of the plan), the insurance companies, and other Plan fiduciaries shall have full and absolute discretionary authority to administer and interpret the terms of the Plans and to determine eligibility for and entitlement to Plan benefits. Any interpretation or determination made under such discretionary authority will be given full force and effect and shall be binding on the participants, employees, their dependents and all interested parties, unless it can be shown that the interpretation or determination was arbitrary and capricious.

**Note**: The Life, AD&D, and Long Term Disability benefits described in this summary plan description (SPD) are provided under insurance contracts with Metropolitan Life Insurance Company . . . (BQ 01517)

The Certificate of Insurance for Long Term Disability issued by MetLife to Airborne

---

[1] For purposes of this Opposition only, MetLife adopts certain allegations contained in Ms. Bourque's complaint. In addition, the fact section includes facts that can be discerned from the documents that were filed in this action by MetLife as the Record for Judicial Review on March 11, 2005. Reference numbers refer to the Bates-stamped numbers in the volumes of documents filed with the Court.

Express describes the benefits under the Plan. It also provides:

### DISCRETIONARY AUTHORITY OF PLAN ADMINISTRATOR
### AND OTHER PLAN FIDUCIARIES

> In carrying out their respective responsibilities under the plan, the plan administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious. (BQ01514)

For the convenience of the Court, a copy of a letter from an attorney for Airborne Express to plaintiff's counsel with these sections of the Summary Plan Description and MetLife Disability Certificate ("Policy") are attached to the Opposition to Plaintiff's Motion that the Denial of Benefits Claim By Metropolitan Life Insurance Company is Subject to the "De Novo" Standard of Review.

In or about 1999, Ms. Bourque was diagnosed with an unusual form of cancer lymphoma (Non-Hodgkin's Lymphoma). She stopped work on or about August 9, 1999, and a claim for long-term disability benefits was submitted to MetLife. On or about February 21, 2000, Ms. Bourque's claim for long term disability benefits was approved by MetLife, and benefits became payable as of February 5, 2000. (BQ 00169).

On or about October 8, 2003, Ms. Bourque's long term disability benefits were withdrawn by MetLife. (BQ 01227 – 9). The withdrawal was based upon a determination that Ms. Bourque no longer met the definition of disability in the Plan. MetLife concluded that "The available medical documentation on file does not support objective clinical information that supports your current restrictions and limitations that would prevent you from performing the duties of any occupation including your occupation as Administrative Assistant." (BQ 01229) The denial letter noted that Ms. Bourque had completed a Personal Profile Statement on March

3

25, 2003, that stated, among other things, that she was "currently seeking employment and going on job interviews…driving…and use the computer on a daily basis…" The denial letter also referred to a Physician File review and Labor Market Survey that had been conducted by MetLife. In addition, the denial letter provided Ms. Bourque with information as to how to appeal the decision to deny her claim within 180 days, or by April 8, 2004 (adding 3 days for delivery of the letter).

After a number of communications with Ms. Bourque's attorney, including providing the administrative claim file, MetLife provided Ms. Bourque with an additional 45 days to appeal the denial. (BQ 01455 -63). Ms. Bourque requested that MetLife reinstate her long term disability benefits on June 18, 2004 ("Appeal"). (BQ 00804). In that letter, Ms. Bourque's attorney stated that "Ms. Bourque reserves the right to further supplement this appeal. Until such time that all documents are produced, the 180 day time period for appeals does not run." (BQ 00805). Ms. Bourque's attorney submitted additional medical information with her Appeal. In addition, on July 15, 2004, Ms. Bourque's attorney provided another medical report in support of the Appeal. (BQ 00833-70). On July 29, 2004, MetLife informed Ms. Bourque's attorney that it needed additional time to review the Appeal because he had submitted additional medical information (BQ 00872). MetLife referred the Appeal and medical information to Steven J. Feagin, M.D., for a Physician Consultant Review. (BQ 01043).

Apparently, Ms. Bourque's attorney did not receive the July 29, 2004 letter, because on August 10, 2004, he wrote and asked that MetLife reinstate benefits immediately because the notification of benefit determination following the Appeal had not been received. (BQ 00874). MetLife again informed Ms. Bourque's attorney that it needed additional time to review the Appeal because of the additional medical information by letter of August 12, 2004. (BQ 00879).

4

In response, on August 12, 2004, Ms. Bourque's attorney requested that he be provided an opportunity "to respond in writing prior to MetLife before 'closing the record' and refusing to accept written commentary." (BQ 01048). On September 21, 2004, before receiving any decision on the Appeal, and in spite of the continuing dialogue between MetLife and Ms. Bourque regarding the claim, plaintiff filed her complaint for benefits under the Plan.

The plaintiff filed her complaint against MetLife, Airborne Express, Inc. and Airborne Express Long Term Disability Plan (the "Plan). Airborne Express, Inc. and the Plan were dismissed by Stipulation of Dismissal on March 31, 2005.

## ARGUMENT

**I.   PERMITTING DISCOVERY IN THIS CASE IS INCONSISTENT WITH ERISA'S GOAL OF EFFICIENT ADMINISTRATION OF CASES INVOLVING BENEFITS CLAIMS.**

The First Circuit has repeatedly recognized that one of the objectives of ERISA is to resolve disputes over claimed benefits efficiently and expeditiously. Liston v. Unum Corporation Officer Severance Plan, et al., 330 F. 3d 19, 26 (1st Cir. 2003); Recupero v. New England Telephone and Telegraph Company, et al., 118 F. 3d 820, 831 (1st Cir. 1997) (one of ERISA objectives to provide workers inexpensive and expeditious method of resolving disputes over claimed benefits); Lane v. Director of Employee Benefits, Gannett Company, Inc., 253 F. Supp. 2d 57, 63 (D. Mass 2003) (court is to limit its review to the record before the plan administrator to "ensure expeditious judicial review of ERISA benefit decisions" and keep district courts from becoming "substitute plan administrators") The plaintiff's requests to conduct discovery and include extraneous information in the record to be considered by the Court in evaluating MetLife's decision will delay resolution of the case. The administrative record that was reviewed by MetLife is complete, and has been filed with the Court. Plaintiff had

5

ample opportunity to supplement the administrative record in submitting her Appeal and did so. The administrative record is already quite large. No further discovery is necessary for this court to determine whether MetLife's decision was supported by substantial evidence.

In <u>Liston</u>, the trial court denied the plaintiff's request for discovery into how others were treated under an officer severance plan and its change in control provisions. The First Circuit held that there was no abuse of discretion in denying plaintiff's request for discovery. It considered whether the discovery was warranted when the central issue was what the plan promised to the plaintiff, and whether the plan delivered. In this context, the Court recognized that the search requested by the plaintiff would be burdensome, and if allowed, "[e]very administrative denial would be an occasion for a vast and expensive inquiry into what judges sometimes call 'collateral issues.'" <u>Id.</u>, at 26, citations omitted. The Court further reasoned: "Mandating discovery in such a situation would be at odds with the concerns about efficient administration that underlie the ERISA statue itself." <u>Id.</u>

A complete and accurate record of what was considered by MetLife in making its decisions about plaintiff's claim for benefits has been produced, and filed with the court. Permitting the plaintiff to propound requests for production or further interrogatories based upon a generalized request for additional information will certainly delay resolution of the case. The scheduling order requires motions for summary judgment to be filed by May 18, 2005. Permitting the plaintiff to engage in pretrial discovery will delay the determination of the motions, and add unnecessary expense to the case.

**II. PLAINTIFF'S DISCOVERY SEEKS IRRELEVANT INFORMATION BECAUSE THE COURT'S DEFERENTIAL REVIEW OF METLIFE'S DECISION WILL BE BASED UPON THE EVIDENTIARY RECORD PRESENTED TO THE DECISION MAKER.**

Federal Rule of Civil Procedure 26 provides that plaintiff is only entitled to discovery "regarding any matter, not privileged, that is relevant to *the claim or defense of any party*." (Emphasis added). The Plan vests discretionary authority in MetLife to determine eligibility for benefits or to construe its terms. The sole issue in this case is whether MetLife's termination of plaintiff's long term disability benefits was arbitrary and capricious. The arbitrary and capricious standard of review strictly limits the grounds upon which an administrator's discretionary determination can be disturbed. A reviewing court should not "substitute its judgment for that of the [decision-maker]." Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) (brackets in original), quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). As the First Circuit emphasized in Jestings v. New England Telephone & Telegraph Co., 757 F.2d 8 (1st Cir. 1985), it is for plan fiduciaries, and not courts, to choose between reasonable alternatives involving plan administration. Id. at 9. A reviewing court, therefore, should not determine which side it believes is right. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). Instead, the court should give administrators "considerable leeway to interpret and to apply" plan provisions, "setting aside those ... decisions only if they are arbitrary, capricious, or an abuse of discretion." Diaz v. Seafarers International Union, 13 F.3d 454, 456 (1st Cir. 1994).

When an ERISA determination is reviewed for arbitrariness, "there is a strong presumption that the required deferential review of a plan administrator's benefits decision should be limited to the evidentiary record presented to the administrator." Lopes v. Metropolitan Life Insurance Company, 332 F. 3d 1, 5 (1st Cir. 2003) (rejecting plaintiff's

7

attempts to supplement the administrative record with additional medical evidence). Lane v. Director of Employee Benefits, Gannett Co., Inc., 253 F. Supp. 2d 57, 63 (D. Mass. 2003) MetLife has produced the administrative record upon which it made its determination that plaintiff was not disabled within the meaning of the Plan, and considered her request for review of that decision. The Court can review MetLife's decision for arbitrariness based upon this administrative record.

The trial court has the authority to make factual findings about what is or is not properly a part of the record for judicial review. Recupero v. New England Telephone and Telegraph Company, et. al., 118 F. 3d 820, 833 (1st Cir. 1997). It is appropriate and consistent with the purposes of ERISA for the Court to restrict itself to the record as considered by the decision maker who interpreted the employee benefits plan. In this case, the issue to be decided is whether MetLife's determination that the plaintiff was not totally disabled within the meaning of the Plan was arbitrary. Accordingly, the Court should limit its review to the record presented to MetLife, which has already been filed with the Court as the record for judicial review.

**III.  THE PLAINTIFF'S DISCOVERY REQUESTS ARE NOT RELEVANT TO THE ISSUE IN THE CASE.**

Although the Plaintiff characterizes the discovery requested in the motion as "focused," or "limited," an examination of the specific requests reveals that the requests are extremely broad and unduly burdensome given their lack of relevance.[2] For example, the plaintiff requests all claims manuals, claims management guidelines, instructional and training documents available to MetLife's claims adjusters from October 1999 to the present. The decision to be reviewed is

---

[2] MetLife also notes that it has not had the opportunity to respond or object to the Document Requests or Interrogatories as provided by the Fed. R. Civ. P. 33 or 34, since the plaintiff has merely included the requests in its Memorandum and demanded that they be responded to within fifteen days of the Court's order on the motion. Given the breadth of the discovery sought, the time frame is unreasonable and if discovery is permitted MetLife should be given the time allowed by the procedural rules to respond.

8

whether MetLife was arbitrary and capricious when it denied plaintiff's claim for benefits on October 9, 2003. Plaintiff was granted benefits on or about February 5, 2000. There is no dispute about whether she was appropriately granted benefits up to October 9, 2003. MetLife has offered to produce any internal claim guideline for the relevant time period that specifically addresses the plaintiff's disability, provided an appropriate confidentiality stipulation is in place. A generalized request for all internal guidelines and training documents for a six year period, however, does not seek relevant evidence when the issue to be reviewed is whether the determination that the plaintiff was not totally disabled on October 9, 2003 was arbitrary based upon the record before MetLife.

In addition, plaintiff seeks discovery regarding alleged conflicts of interest with the use of Network Medical Review, Elite Physicians, Dr. Gary Philip Greenhood or Dr. Steven Feagin. This request includes an interrogatory which requires MetLife to state all times, without limitation, that MetLife has ever used the services of certain doctors. Similarly, the plaintiff's broad request for information about particular physicians used by MetLife does not seek information relevant to the determination. Indeed, the discovery requested regarding these physicians even exceeds the scope of discovery which would be required if these doctors were testifying as experts in the case – which they are not. For example, Fed. R. Civ. P. 26(a)(2)(b), contains a time limitation of four years for a listing of when an expert has testified. No such limitation is included in plaintiff's request. In this case, the physicians are not testifying as experts. It would be anomalous to permit greater inquiry regarding their background than that permitted for expert discovery. Particularly where the Court's review will be limited under ERISA to a review of MetLife's decision, and not of particular medical evidence, such broad inquiries should be denied. Cf. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832

9

(2003) (rejecting treating physician rule in ERISA cases, although recognizing concern that consultant engaged by a plan may have an incentive to make a finding of "not disabled," however, a treating physician may favor a finding of "disabled").

Unlike <u>Glista v. UNUM Life Insurance Co. of America</u>, 378 F.3d 113 (1st Cir. 2004), the issue in this case does not require the interpretation of a specific clause in the plaintiff's disability plan. Contrary to the facts presented in this case, the plan administrator in <u>Glista</u> found that the plaintiff was disabled. <u>Id.</u> at 115. The plan administrator, however, denied Glista's claim on the ground that his disability was a "pre-existing condition" and excluded from coverage under the plan. <u>Id.</u> Glista claimed that the denial was erroneous and he sought to introduce the plan administrator's internal guidelines and training materials. <u>Id.</u> at 120-21. The issue in <u>Glista</u> was whether the plan administrator's adverse interpretation of the "pre-existing condition" clauses was consistent with the plan administrator's internal documents interpreting those same provisions. <u>Id.</u> at 124. The First Circuit concluded that the plan administrator's internal documents were admissible because they were relevant to the interpretative issue in that case. <u>Id.</u> at 124-25. The First Circuit, however, declined to adopt a "hard-and-fast rule" for deciding the admissibility and relevance of a plan administrator's internal documents. <u>Id.</u> at 115-16. It also recognized that the weight and admissibility of internal documents will vary with the facts of each case. <u>Id.</u> at 123.

Here, MetLife's internal guidelines and training materials have no bearing on the issue in dispute because it does not involve the interpretation of a particular clause in the Plan. Furthermore, the requested discovery has no bearing on whether MetLife's decision to terminate plaintiff's benefits was arbitrary and capricious. MetLife terminated plaintiff's benefits because it found no objective medical evidence to substantiate plaintiff's disability according to the

10

definition in the Plan. Plaintiff has failed to articulate how MetLife's internal guidelines and training materials are relevant to the simple issue at hand: was it arbitrary and capricious for MetLife to terminate benefits on October 8, 2003, when it determined that plaintiff was no longer disabled within the meaning of the Plan? As there is no interpretative issue regarding a plan provision, and as MetLife's internal documents are irrelevant to the sole issue in this case, discovery of MetLife's internal documents should be denied.

Similarly, the amount of work that certain physicians accomplish for MetLife is irrelevant to the issue at hand. Indeed, if some physicians do a tremendous amount of work for MetLife it may be indicative of the quality of their work and their responsiveness, rather than any alleged conflict of interest. For example, MetLife may often use certain doctors for independent physician reviews because MetLife is aware of their qualifications, familiar with their good work and the relationship with MetLife guarantees timely delivery of opinions. If MetLife rarely used a particular physician, it might be because initial work conducted by the physician had been suspect or because use of the physician could delay a decision of a claim. It does not necessarily follow that volume of work for MetLife has a bearing on whether a report is sufficient. All reviews conducted by physicians of the plaintiff's claim have been produced. Any reports prepared by physicians that were considered relative to plaintiff's claim for benefits have been produced. Plaintiff is capable of making arguments about the scope or quality of these reports without any additional discovery into the volume of work conducted by a physician for MetLife.

Further, because the physicians are not the decision makers in the case, it is not their decisions or their conflict of interest that is relevant. Their reports will be considered by the Court to determine whether MetLife's decisions were reasonable, but discovery about the physician's alleged conflict of interest is not relevant. Abromitis v. Continental Casualty Company/CNA Insurance Companies, 261 F. Supp. 2d 388 (W.D.N.C. 2003) (claimant could not compel discovery about vocational expert as expert did not make the decision being reviewed). The Court in Abromitis denied plaintiff's motion to compel discovery, noting that discovery generally is not available where, as here, the Court's review is for abuse of discretion. The Court also recognized that to permit such discovery would increase both the time and expense involved in reviewing ERISA benefits decisions, and that it is a fact of litigation that defendants and plaintiffs routinely hire experts whose independence can be seriously questioned. Plaintiff's generalized request for discovery outside of the administrative record considered by MetLife should be denied, both because it is irrelevant and because responding to such requests when propounded will add unnecessary expense and burden to the litigation, defeating one of the objectives of ERISA.

## CONCLUSION

The defendant MetLife respectfully requests that the Plaintiff's Motion for Focused Pre-Trial Discovery Relating to the Scope of the Administrative Record be denied. Further, in the event such discovery is permitted, MetLife requests that the Scheduling Order in this case be amended to reflect the additional time which will be required to respond to plaintiff's expansive requests for discovery.

          METROPOLITAN LIFE INSURANCE
          COMPANY
          By its attorneys,

          /s/Constance M. McGrane
          James F. Kavanaugh, Jr. BBO# 262360
          Constance M. McGrane BBO# 546745
          CONN KAVANAUGH ROSENTHAL PEISCH
           & FORD, LLP
          Ten Post Office Square
          Boston, MA 02109
          617-482-8200

Dated: April 4, 2005

223572.1