UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEBORAH M. BOURQUE,

       Plaintiff

v.                                                                Civil Action No. 04-12037-WGY

METROPOLITAN LIFE INSURANCE
COMPANY ET AL

       Defendants

# EXHIBIT A TO MOTION OF PLAINTIFF TO COMPLETE RECORD ON REVIEW

## Part II of II

DEBORAH BOURQUE
By Her Attorneys,

*/s/Jonathan M. Feigenbaum*

_____
Jonathan M. Feigenbaum, Esq.
B.B.O. N#546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787

L:\Dbor002\exhibit A.wpd

-1-



Created By:    Karry Duever/Ins/MetLife/US        Date Created:        01/06/1999

# Claim Management Guidelines
## 7. Claim Investigation Process
### Chapter 10: Disability Assessment from the Occupational Standpoint
**Effective Date: 07/01/1999**

## Introduction

In order for the CS/CM to determine if a functional limitation exists that is preventing the employee from working, the CS/CM must understand the employee's occupational requirements. This section discusses work classifications as defined by the Dictionary of Occupational Titles as well as interpreting a plan's disability definition from the occupational standpoint.

## Work Classifications

When the CS/CM obtains information concerning the essential duties of the employee's occupation, the CS/CM should assess that particular occupation's work strength requirements. Strength classifications place occupations in specific categories based upon the occupation's physical demands.

The Dictionary of Occupational Titles (1991 edition) identifies the following work strength requirements:
- Sedentary
- Light
- Medium
- Heavy
- Very Heavy

In addition, requirements are further defined as follows:
- Occasionally:  activity or condition exists up to one-third of the time
- Frequently:    activity or condition exists from one-third to two-thirds of the time
- Constantly:    activity or condition exists two-thirds or more of the time

Each of the work classifications above the sedentary level includes the capacity to perform work at the level(s) below that particular classification.

### Sedentary Work

Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are

1

Metropolitan Life Proprietary & Confidential Information

ML 0519

sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

### Light Work

Exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for sedentary work.

Even though the weight lifted may only be a negligible amount, a job should be rated light work:
- When it requires walking or standing to a significant degree; or
- W when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or
- W when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

NOTE: the constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of the worker even though the amount of force exerted is negligible.

### Medium Work

Exerting 20 to 50 pounds of force occasionally and/or 20 to 25 pounds of force frequently and/or up to 10 pounds of force constantly to move objects. Physical demand requirements are in excess of those for Light Work.

### Heavy Work

Exerting 50 to 100 pounds of force occasionally and/or 25 to 50 pounds of force frequently and/or 10 to 20 pounds of force constantly to move objects. Physical demand requirements are in excess of those for Medium Work.

### Very Heavy Work

Exerting in excess of 100 pounds of force occasionally and/or in excess of 50 pounds of force frequently and/or in excess of 20 pounds of force constantly to move objects. Physical demand requirements are in excess of those for Heavy Work.

## Own Occupation

### Material Duties

The material duties of an employee's occupation are defined as the primary job duties that are essential to that particular occupation.

Circumstances not usually classified as material duties of an occupation would include:

- Certain duties required by a particular employer but which would not be required in the national economy by other employers (Note: this would not apply to plans where the definition of disability states that the employee must be disabled from performing his/her regular occupation for his/her own employer.)

2

Metropolitan Life Proprietary & Confidential Information

MLO520

- If a particular supervisor requires a job be performed differently than other supervisors of the employer
- If an employee *elects* to perform his/her occupation differently than the employer has delineated or differently than other employees performing the same occupation
- If the employee is unable to drive to or from work. The exception to this is if the employee's job requires driving. An example of this exception would be sales or delivery people.

**Earnings Ability**

Our standard plan focuses on the employee's ability to earn income. An example of the MetLife 1998 standard plan wording is as follows:

> "during your Elimination Period and the next 24 month period,
> you are unable to earn more than 80% of your Predisability
> Earnings or Indexed Predisability Earnings at your Own
> Occupation for any employer in your Local Economy;"

During the first 24 months of benefit payments, in order for the employee to continue to qualify for benefits, he/she must be unable to earn 80% of his her Predisability Earnings or Indexed Predisability Earnings.

*Example:*

> If the Employer reports an Employee's gross salary as $25,000 per year, the Employee's Monthly Earnings and monthly Predisability Earnings would be $2083.33. ($25,000 / 12 months = $2083.33)

**Indexed Predisability Earnings**

Indexing assumes that if the employee had been able to continue to work, their earnings would have increased by various factors including raises and inflation. Indexing is used to adjust the figure used for predisability earnings when determining the employee's eligibility for continued benefits based on the earnings test in the definition of disability. Indexing does *NOT* directly affect the amount of the gross monthly benefit paid to the employee.

> NOTE: The CS/CM should refer to the plan language to ensure that he/she is applying the indexing appropriately.

According to our 1998 standard plan language, Indexed Predisability Earnings means that our Predisability Earnings increased by 7%, compounded annually. The first increase will take place on the date the 13th Monthly Benefit is payable.

*Example 1:*

> The employee is a 36 year old police beat reporter for a large newspaper chain. The employee was recently diagnosed with multiple sclerosis and the severity of her symptoms prevents her from working full-time. The employee is on medication and receiving therapy and hopes to be able to return to work on a full-time basis at some point in the future. She is currently able to work only 4 hours per day because of the extreme fatigue and other complications that accompany her condition.
>
> The employee's monthly salary prior to her illness was $4000 per month. Working at 4 hours per day at a less stressful reporting position would only allow the employee to earn $1800 per month. Since the employee is not able to earn at least 80% of his/her predisability earnings ($4000 x 80%

3

Metropolitan Life Proprietary & Confidential Information

MLO521

= $3200), he/she would be considered disabled per the definition of disability in the plan.

After 12 months of disability payment, the employee's earnings test would be based on his/her indexed predisability earnings. The indexing factor is 7%.

($4000 x 7% = $280) Indexed Predisability Earnings = $4280

80% of Indexed Predisability Earnings after 12 months = $3424

If the employee were unable to earn due to disability at least $3424, at his/her own occupation for any employer, he/she would still meet the definition of disability per the plan.

**Example 2:**

Employee's predisability earnings were $4000 per month. Based on the previous example, it was determined that the employee was unable to earn 80% of her predisability earnings.

Assume the employee's disability began on 7/15/96. The employee's benefit payments began 90 days later on 10/13/96. As of the 13th month of benefit payment, commencing on 10/14/97, it will be necessary to index the employee's predisability earnings to determine if she still meets the plan definition of disability, an inability to earn at least 80% of her Indexed Predisability Earnings.

Indexing:         $4000 x 7% = $280

Indexed predisability earnings as of 10/14/97 = $4280.00

($4000 + $280 = $4280)

As of 10/14/97, the earnings test would have to use the employee's Indexed Predisability Earnings of $4280, to determine if she is able to earn enough income to no longer be considered disabled per the terms of the plan.

Indexed predisability earnings as of 10/14/98 = $4579.60

($4280 x 7% = $299.60)

($4280 + $299.60 = $4579.60)

As of 10/14/98 the new reference for Indexed Predisability Earnings would be $4579.60.

## Any Occupation

The plan may also provide a definition of disability that requires the employee to be disabled from performing any occupation for any employer. This definition is usually found in LTD plans as either the initial requirement for benefits to be paid or as a subsequent requirement that must be met after a specific period of time has elapsed during which benefits were paid due to disability from an employee's own occupation. This latter requirement or date is normally called the    "Any Occ" date or "Transition Date".

*Example of the MetLife 1998 standard plan language:*

                    Metropolitan Life Proprietary & Confidential Information

MLo522

**Calculating Indexed Predisability Earnings**

In this calculation example, we are assuming that the disability continued past 24 months of benefit payments.

Disability Commenced:  7/15/95

Benefits Commenced:  10/15/95

Predisability Earnings:  $4000/month

1st indexing:    10/15/96   -   Indexed Predisability Earnings = $4280

2nd Indexing:   10/15/97   -   Indexed Predisability Earnings = $4579.60

**60% of Indexed Predisability Earnings as of 7/15/97 = $2747.76**

After 24 months of benefit payments, the new earnings test is 60% of Indexed Predisability earnings.                    If the employee's illness continued and as a result of her illness she was unable to earn at least $2747.76 for any employer in her local economy, she would still be considered disabled per the terms of the plan.

**Local Economy**

We consider only the local economy not the national economy, to determine whether an employee meets the definition of "Disability." Employees are not expected to move or travel an unreasonable distance in order to obtain employment.

MetLife Disability standard contract considers Local Economy to mean the geographic area surrounding the employee's place of residence which offers reasonable employment opportunities. It is an area within which it would not be unreasonable for the employee to travel to secure employment. If the employee move from the place he or she resided when he or she first became Disabled, MetLife Disability may look at both the former place of residence and the employee's current place of residence to determine local economy.

If Local Economy is not specifically defined in the plan, it is generally defined as:
- A 60-mile radius of where the employee resides,
- A one- (1) hour commute, or
- What would be considered a "normal" commute for the employee's locale.

Metropolitan Life Proprietary & Confidential Information

MCO523



**Created By:    Linda Boncek/ins/MetLife/US      Date Created:      05/18/2001**

# Claim Management Guidelines
## 8. Claim Resources
### Chapter 7: Physician Consultant Program
#### Effective Date: 08/01/2001

## Introduction   .

Independent Physician Consultant (IPC) resources are independent medical practitioners who are contracted by MetLife Disability to perform certain services. These physicians are Board Certified in their area of expertise and many maintain an active clinical practice. The IPC resources are available to the disability claim staff for file review and other services to support claim management.

## Goals of the Physician Consultant Program

The goals of this program include the following:
- Expedite early communication and intervention with the employee's treating physician(s),
- Support appropriate claim management regarding recovery duration, employee return to work efforts and potential,
- Enhance risk identification and prevention, and
- Influence appropriate utilization of resources.

## Role and Responsibility of the Independent Physician Consultant

The role of the IPC has been defined as being able to provide a clinical opinion regarding the employee's medical condition(s).  The On-site IPC is one of several physicians, representing a variety of medical specialties, who are available to work within the claim offices on a scheduled basis.

When conducting claim file reviews, it is expected that the IPC will provide the following services:

- Provide a clinical opinion regarding the medical diagnosis of the employee
- Clarify complex clinical information or situations
- Evaluate the employee's subjective complaints in the context of the documented clinical findings
- Provide an assessment of the current treatment plan being provided, as well as, explore possible alternative treatment measures, if appropriate
- Communicate with the treating provider(s), when requested or appropriate
- Evaluate the clinical severity of the employee's illness and compare it to anticipated recovery based on reasonable clinical expectation
- Offer an opinion whether the employee's current course of clinical care and treatment is appropriate and integrates a return to work focus

1                                                    Metropolitan Life Proprietary & Confidential Information    ML 406(1)

- Provide an opinion as to whether a return to work will be safe and successful, as appropriate
- Identify and recommend appropriate utilization of clinical and other resources
- Offer an opinion as to the employee's functional impairment based upon the documented clinical findings, and render a professional opinion regarding restrictions and limitations
- Participate in claim review project and the identification of potential claim trends

## IPC Credentials and Release of Such Information

MetLife Disability IPCs undergo a yearly credential process. We should acknowledge all requests from claimants, or their representative, for information regarding the qualifications of an IPC who has provided a review and recommendation on a disability claim. Such requests should be responded to in a timely manner with the appropriate level of information provided to the requesting party based on the guidelines below.

There are two (2) formats for providing IPC qualifications, and the format released will be dependent upon the type of request.

### IPC Credential Summary
This is a brief paragraph providing the essential IPC qualifications regarding experience, licensure and board certification.

### IPC Curricula Vitae (CV)
This is a more detailed and complete listing of the IPC's experience and qualifications.

If an IPC has provided a review and opinion on a claim file:

- A IPC Credential Summary will be provided to a treating provider upon verbal request
- A IPC Curricula Vitae will be released to a treating provider upon written request
- For denied claims, a IPC Credential Summary will be released to the claimant upon their request
- During the course of an ERISA appeal, the IPC Curricula Vitae will be released to the appropriate party(ies) upon written request

Requests for IPC credentials should be forwarded to the Nurse Consultant Unit Manager for the office. The Nurse Consultant Unit Manager will provide a current copy of the IPC Credentials Summary for release. The Nurse Consultant Unit Manager will forward any requests for IPC Curricula Vitae to the Clinical Program Manager or the Vendor Program Manager who maintain the Curricula Vitaes on file.

## Types of Independent Physician Consultant Resources

The Physician Consultant Program utilizes the following physician resources:
- On-site IPCs
- External IPCs

The MetLife Disability Medical Director oversees the Physician Consultant Program.

### On-site Independent Physician Consultants

The On-Site IPC is one of several physicians, representing a variety of medical specialties, who are available to work within the claim office on a scheduled basis.

The On-site IPC is able to render the following claim services:
- Focused File Review (FFR),

2

- Physician File Review (PFR),
- Contact with the employee's attending physician, and
- Staff education and training.

**External Independent Physician Consultants**

The external IPC consist of a number of physicians representing a broad range of medical specialties. The external IPCs have the primary role of performing a complete review of the medical and/or vocational claim records and responding to the specific question or issues posed by the referring staff member. This is called a Physician File Review (PFR). Upon completion of the claim review, a written report will be prepared and sent to the referring staff member. The PFR is discussed in greater detail below.

> Note:  The External IPCs are considered external vendors and are accessed through the MetLife Disability Vendor program.

## Types of File Reviews Performed by the Independent Physician Consultants

The IPC may perform:
- Focused File Reviews, or
- Physician File Reviews.

**Focused File Reviews**
This review consists of a clinical analysis and documented summary by the On-Site IPC based upon specific questions or issues posed by the CS/CM or Nurse Consultant. This type of claim review includes consideration of only selected parts of the claim's medical record and is most appropriate for less complex situations. If a claim may be denied based on the outcome of this review, consideration may be given to having a Physician File Review conducted so that the entire submitted medical information is evaluated.

The IPC should complete a review summary that includes the following:
- Opinion regarding the employee's current impairments) and retained function as supported by the clinical findings present in the claim record, and
- Conclusions and recommendations made to the referral source.

The results of the review should be documented in diary memo. If this is not feasible, a written report signed by the physician documenting the review should be furnished to the referral source.

**Physician File Review**
Based upon specific questions or issues posed, the IPC will conduct a thorough review of the entire medical and/or vocational claim record and provide the clinical analysis previously described. Generally the External IPC performs this type of file review.

## Contact With Employee's Attending Physician

The IPC may also have direct contact with the employee's treating physician(s), to:

- Obtain additional clinical information and insight,
- Discuss treatment options and alternatives
- Discuss return to work opportunities, including accommodated/modified duty or part-time alternatives

3

000058 MetLife Claims Guidelines Palmiotti v MetLife

Contact with the employee's treating provider is strongly encouraged especially if there is any difference in opinion regarding the employee's level of function and/or treatment plan.

## Independent Physician Consultant Referral Criteria

The CS/CM, or other staff member, should consider having a claim reviewed by an IPC in any of the following circumstances:

- Employee's symptoms do not match the clinical findings and clarification of the diagnosis is necessary,

- To assist in the determination of the employee's primary disabling condition,

- The employee's treating medical provider's recovery prognosis exceeds normal recovery time-frames for the employee's medical condition and job requirements,

- As an assessment of the employee's medical condition as compared to other individuals with the same diagnosis to determine improvement and recovery potential,

- As another opinion when the employee's treating medical provider is not the specialty type most appropriate for the employee's presenting diagnosis,

- As another medical opinion when the restrictions by the employee's attending physician do not appear reasonable based upon the submitted clinical record,

- When direct physician-to-physician contact is needed to assess the employee's medical status and any apparent contradictions in the claim record or other medical reports,

- When the treating medical provider states that he/she will only speak with a physician about the employee's treatment or return to work plan.

### Referral Considerations

Prior to utilizing the IPC resource, the CS/CM should have considered seeking resolution to questions by requesting medical information in the following preferred order:

- The attending physician's records,

- Internal resources (medical references, Nurse Consultants, etc.), or

- Specific questions addressed to the employee's attending physician.

The medical information requested may include some, or all, of the following: office notes, test results, hospital records, physical therapy notes, consultant examinations, etc.

*Prior to initiating a Physician File Review, the CS/CM should consult with the Nurse Consultant to obtain validation of the referral.*

## Determining the Appropriate Resource and Service

The following chart illustrates guidelines for selecting the type of IPC resource in order of preference for the type of referral question or issue.

| On-site IPC | External IPC | Question or issue, indicated Below |
|---|---|---|
| 1st | 2nd | Inconsistency in clinical findings, appropriate medical provider type |
| 1st | 2nd | Questions regarding employee's diagnosis |
| 1st | 2nd | Treatment appropriateness or alternatives |
| 1st | 2nd | Duration, time appropriateness, intervention required |
| 1st | 2nd | Need for report interpretation |
| 1st | 2nd | New diagnosis, same claim |
| 1st | 2nd | Social Security Disability issues |
| 1st | 2nd | Impairment restrictions, limitations |
| 1st | 2nd | Work accommodations |
| 1st | 2nd | Settlement Appropriateness |
| 2nd | 1st | Denial appropriateness |

## Claim File Preparation

Claim files sent for review to any of the IPCs should include the following information, at a minimum:

- A summary documenting the rationale for the referral,

- Diary Memos) regarding the claim, as appropriate,

- Detailed information from the employee's providers, and

- Job description from the employer (or such information as is available or can be reasonably assumed - and is labeled- from the job title or other sources).

## Referral Process for On-site Independent Physician Consultants

The following is the process that would be followed by the CS/CM, or other staff member, to initiate a referral to a MetLife Disability On-Site IPC:

- Determine the need for IPC expertise.

- Complete the IPC Referral Form.

- List the names of documents, including the Document Control Number (DCN), in the designated field on the referral form.

5   Note: If a document to be reviewed contains multiple pages or images, indicate the specific pages or images to be reviewed. If information pertinent to the review is documented in diary memo, "copy and paste" the diary(ies) into the IPC Referral Form.

ML466(5

- Forward the IPC Referral Form via Lotus Notes to the claim office mail IPC mailbox where the IPC is located.
  - Atlanta_MD
  - Glastonbury_MD
  - MtProspect_MD
  - Utica_MD

Note: *When the IPC Referral Form is forwarded, the following information will pre-fill in the Lotus Notes Subject line:*
- *Dr. Name / Employee Name / Requesting Office*

- Recommendation: Requester retains a copy of the IPC Referral Form in their Lotus Notes until the IPC report has been received.

- Print the IPC Referral Form and place in the designated area for outgoing correspondence being sent to ACS for imaging. This will ensure that an imaged copy of the referral is associated with the claim.

- Enter a diary memo with call-up documenting the IPC referral.

Note: *If the claim being referred for IPC review is totally, or partially, a "paper" claim file, a copy of the IPC Referral Form should be attached to the claim file. The claim file should be placed in the designated area for such referrals.*

- IPC Desk Log: Log the claim information into the IPC Desk Log maintained by the office.

- The IPC consults the IPC Desk Log and selects referrals based upon priority and date of referral.

- The IPC selects the referral from the office IPC Mailbox, opens and reads the referral.

- The IPC accesses the ACS SIR 2000 system, or obtains the paper claim file, to review the documents listed on the referral form and proceeds with the review.

- The IPC completes the review and any necessary discussion with the person who made the referral.

- The IPC either types the report using word processing, or dictates the report to a transcription service.

Note: *There may be claim office variations in the protocols used for transcription services. The IPCs will be notified of the particular office's process.*

- If there was no verbal discussion of the review, the IPC notifies the person who made the referral, via Lotus Notes, that the report was completed.

Metropolitan Life Proprietary & Confidential Information   ML 406 (b)

## Referral Process for Inter-Office On-Site Independent Physician Consultants

Should the CS/CM or other staff member wish to have a claim reviewed by an On-Site IPC that works in a different office, the following process should be followed:

- Determine the need for IPC expertise.

- Determine the availability of the IPC by checking the Physician Scheduling Database.

- Telephone the IPC Nurse Consultant Contact in the other office to confirm the IPC's anticipated timeframe to complete the review. This could be affected by the IPC's current number of referrals, scheduled availability, etc.

- Complete the IPC Referral Form.

- List the names of documents, including the Document Control Number (DCN), in the designated field on the referral form.

*Note: If a document to be reviewed contains multiple pages or images, indicate the specific pages or images to be reviewed. If information pertinent to the review is documented in diary memo, "copy and paste" the diary(ies) into the IPC Referral Form.*

- Forward the IPC Referral Form via Lotus Notes to the claim office mail IPC mailbox where the IPC is located.
  - Atlanta_MD
  - Glastonbury_MD
  - MtProspect_MD
  - Utica_MD

*Note: When the IPC Referral Form is forwarded, the following information will pre-fill in the Lotus Notes Subject line:*
- *Dr. Name / Employee Name / Requesting Office*

- Recommendation: Requester retains a copy of the IPC Referral Form in their Lotus Notes until the IPC report has been received.

- Print the IPC Referral Form and place in the designated area for outgoing correspondence being sent to ACS for imaging. This will ensure that an imaged copy of the referral is associated with the claim.

- Enter a diary memo with call-up documenting the IPC referral.

*Note: If the claim being referred for IPC review is totally, or partially, a "paper" claim file, a copy of the IPC Referral Form should be attached to the claim file. The claim file should be forwarded to the claim office, attention to the IPC Nurse Consultant Contact, where the physician is located.*

- The IPC Nurse Consultant Contact checks the office's IPC mailbox daily for interoffice referrals and completes the IPC Desk Log for any interoffice referrals.

- The IPC consults the IPC Desk Log and selects referrals based upon priority and date of referral.

- The IPC selects the referral from the office IPC Mailbox, opens and reads the referral.

- The IPC accesses the ACS SIR 2000 system, or obtains the paper claim file, to review the

Metropolitan Life Proprietary & Confidential Information    RL406(7)

- The IPC accesses the ACS SIR 2000 system, or obtains the paper claim file, to review the documents listed on the referral form and proceeds with the review.

- The IPC completes the review and any necessary discussion with the person who made the referral.

- The IPC either types the report using word processing, or dictates the report to a transcription service.

> *Note: There may be claim office variations in the protocols used for transcription services. The IPCs will be notified of the particular office's process.*

- If there was no verbal discussion of the review, the IPC notifies the person who made the referral, via Lotus Notes, that the report was completed.

## Referral Process for Physician File Reviews

External IPCs are utilized for Physician File Reviews (PFR) in instances where a review of the entire medical and/or claim record is needed to resolve the questions or issues that have been identified. As previously described, the External IPC is considered part of the MetLife Disability Vendor Program.

The following is the process that would be followed by the CS/CM, or other staff member, to initiate a referral for a PFR:

- Determine the need for a PFR.

- Complete the PFR Referral Form.

- List the names of documents, including the Document Control Number (DCN), in the designated field on the referral form.

> *Note: If a document to be reviewed contains multiple pages or images, indicate the specific pages or images to be reviewed. If information pertinent to the review is documented in diary memo, "copy and paste" the diary(ies) into the IPC Referral Form.*

- Forward the PFR request, via Lotus Notes, to the Nurse Consultant for validation.

- Enter a diary memo documenting the request for a PFR with a "same day" call-up to the Nurse Consultant.

- The Nurse Consultant reviews the request, including accessing the referenced DCNs in the ACS SIR 2000 system, and either approves or rejects the request.

> *Rejected Requests: The Nurse Consultant will return, via Lotus Notes, the PFR Referral Form to the person who initiated the request and document in diary memo the rationale for the decision, including any recommendations for alternate actions. The PFR Referral Form should be printed and placed in the designated area for outgoing correspondence being sent to ACS for imaging. This will ensure that an imaged copy of the referral is associated with the claim.*

- The Nurse Consultant validates the referral by entering his or her name and title in the designated area on the form and forwards the referral form to the Scheduler.

- The Nurse Consultant enters a dairy memo and sets a "same day" call-up to the PFR Scheduler. The diary memo header should state: *"PFR Referral"*.

8

ML 406

000005 MetLife Claims Guidelines Palmiotti V MetLife

- The Nurse Consultant enters a diary memo, including rationale, indicating that the PFR request is approved and sets a "same day" call-up to the CS/CM, or other staff member, who initiated the referral.
    - The staff member who initiated the referral should print the claim images and/or photocopy the information that is to be sent to the External IPC. The information should be given to the PFR Scheduler.

- The PFR Scheduler reviews the referral form to ensure that all information has been completed and that the Nurse Consultant has approved the request.

- The PFR Scheduler selects the vendor from an approved vendor listing and adds the vendor name to the referral form.

- The PFR Scheduler enters information into the Vendor PFR log. The information entered includes:
    - Employee full name
    - Claim number,
    - Report number
    - Requester Owner ID number
    - Appeal status
    - Date referred to the Scheduler
    - Primary and secondary diagnoses,
    - Vendor name and date of referral to the vendor

- The PFR Scheduler faxes the referral, including the claim information, to the vendor.

- The form is returned, via Lotus Notes, to the individual who initiated the request.
    - The form should be sent to ACS for imaging and association with the claim.

- The PFR Scheduler retains a copy of the referral in a designated Lotus Notes folder for future reference, if necessary.

- The vendor begins processing the request upon receipt.

## Physician Consultant Expectations

The On-site and External IPCs are expected to provide a clinical opinion and/or recommendation in response to the issues or questions posed to them by the MetLife Disability staff.

It is expected that the both the On-site and External IPCs will have an understanding of and adhere to the following roles and responsibilities:

- Demonstrate basic knowledge of disability claim management concepts,

- Provide with analysis regarding the clinical findings related to the medical diagnosis, treatment measures and prognosis for improvement or recovery from the medical condition,

- Provide an opinion regarding recovery duration for the employee's medical condition or injury based on the clinical record,

- Initiate contact with the employee's medical provider(s) as needed to resolve issues and/or expedite the claim management process,

9

Metropolitan Life Proprietary & Confidential Information    ML 406(9)

- Identify areas of opportunities for intervention where a more efficient management of resources, (i.e., medical, therapeutic, rehabilitative and/or vocational) could be utilized, and

- Demonstrate knowledge and understanding of functionality, along with the ability to analyze and organize data and formulate rational conclusions.

## Documentation Requirements for the Physician Consultants

The following are general guidelines for documentation that the Physician Consultants should adhere to.

### On-site IPCs

The On-site IPC's claim review summary should address the following issues:
- Employee's subjective complaints vs. the documented clinical findings,
- Severity of the employee's condition as compared to similar individuals,
- Prognosis of the employee's condition pertaining to:
  - clinical improvement
  - likelihood of full recovery
  - change in limitations/abilities
- Reasonable limitations/abilities for the employee based upon the clinical record,
- Appropriateness of the employee's diagnosis,
- Alternate treatment options,
- Physician-to-physician dialogue,
- Any correspondence sent to the employee's medical provider(s), and
- Specific questions noted by the referring source.

Documentation of the On-site IPCs should not include :
- Declaration of the employee's disability status,
- Critique of the employee's treating physician(s),
- Reference to any disability plan provisions, and
- Statements which could be interpreted as derogatory.

In addition to the points already described, the claim review summary should be objective, accurate and summarized so that a reader who is unfamiliar with the claim would be able to understand what has transpired.

Summaries should not contain any misspellings and should be grammatically correct. If abbreviations are used within the diary memo or report, the abbreviations should be standard medical or MetLife Disability accepted abbreviations.

At times, an IPC may become involved in an unplanned claims discussion with a MetLife Disability staff member. This is generally referred to as a "walk-up." If general medical information is discussed no documentation is required. However, if the information provided by the IPC will be used as part of the rationale for a claim decision, the IPC should provide written documentation of the discussion and recommendations made, if any. During the "walk-up" discussion, should the IPC determine that a formal referral is more appropriate, the IPC will so advise the staff member. The IPC will document all "walk-ups" in the IPC Desk Log for billing and tracking purposes.

### External IPCs

Metropolitan Life Proprietary & Confidential Information     ML 406 (14)

The External IPCs are also accountable to the previously described documentation requirements. Documentation will take place in a report format that is provided to MetLife Disability.

### Phone Calls

If the Physician Consultant makes or receives a phone call in association with the claim review, documentation of the call is expected and should include the following:

- Call participant identification,
- Key points/issues discussed,
- Follow-up actions necessary by either party,
- Time-frames for any follow-up actions to occur, and
- Documentation if a confirmation letter was sent regarding the conversation.

If the Physician Consultant was unsuccessful in reaching the party called and requested a return phone call, this should also be documented. Preferably, the documentation should indicate when the return call is expected and the name of the person who will be returning the call.

#### Example:

"Call made to Dr. Smith. Message left with office manager for Dr. Smith to return my call this afternoon."

### Correspondence

If the IPC sends a letter to a medical provider, this should be documented. The documentation should include:

- To whom the correspondence was sent, and
- Anticipated time-frame for a response, if applicable.

All correspondence sent by the IPC should be signed by the physician.   A copy of the correspondence sent is retained for the claim file.

If a response is received by the CS/CM, the claim should be referred back to the IPC. The new information, if applicable, should be reviewed and documented by the IPC as previously described.

Any changes made to reports or other documentation will require initialing by the IPC and a copy of the most current retained in the claim file.

### IPC Report Format

It is not appropriate for the IPC to use MetLife Letterhead stationary for IPC reports. Thus, when preparing their report, the IPCs will use the following format for the "Letterhead" portion of the report:

- Physician Consultant Review
- Demographics
    - Date of review
    - Employee Name
    - Claim Number
    - Employee SSN

11

000000 MetLife Claims Guidelines Palmiotti V MetLife

- Referral Source Name
-
- Name, Title and Board Certification Specialty
- Independent Physician Consultant Review for MetLife Disability

## Physician Consultant Work Standards

The Physician Consultant's performance and reports will be submitted to ongoing monitoring to ensure that our consultants meet established quality standards.

Indicators will include:

- Overall professional behavior,
- Responsiveness,
- Timeliness (impact on expeditious adjudication),
- Clinical skills,
- Compliance with established guidelines,
- Thoroughness of review,
- Completeness and organization of documentation, including reports,
- Relevance of conclusions reflective of the referral request, and
- Meeting credentialing requirements and
- Maintaining current licensure.

> *Note: The External IPCs must also comply with MetLife Disability's Vendor Program standards.*

## Review of the Physician Consultant's Report

When the CS/CM receives the IPC's report, it should be reviewed immediately.

The CS/CM should resolve any questions regarding the report by contacting the IPC. Generally, the CS/CM should forward a copy of the report to the employee's attending physician for review and/or comment. The IPC's findings may be consistent with and support the attending physician's assessment of the employee's medical condition. However, if the IPC's findings are different, the CS/CM should question the attending physician regarding any such discrepancies. Consequently, the attending physician may revise the original assessment of the employee's condition and extent of disability. The CS/CM may utilize other claim resources (i.e., Nurse Consultant, etc.) for additional opinions if discrepancies still exist.

### Release of the IPC Report

If the IPC's report supports claim denial or termination, it should always be sent to the employee's attending physician for review and or comment prior to denying or terminating the claim.

Additionally, the IPC report may be released under other circumstances, including the following:

- If follow-up and comment is requested from the treating provider
- If requested based upon ERISA regulations in the case of a claim appeal

Metropolitan Life Proprietary & Confidential Information    ML 466 (2)

## Independent Physician Consultant Referral Criteria

The CS/CM, or other staff member, should consider having a claim reviewed by an IPC in any of the following circumstances:

- Employee's symptoms do not match the clinical findings and clarification of the diagnosis is necessary,

- To assist in the determination of the employee's primary disabling condition,

- The employee's treating medical provider's recovery prognosis exceeds normal recovery time-frames for the employee's medical condition and job requirements.

- As an assessment of the employee's medical condition as compared to other individuals with the same diagnosis to determine improvement and recovery potential,

- As another opinion when the employee's treating medical provider is not the specialty type most appropriate for the employee's presenting diagnosis,

- As another medical opinion when the restrictions by the employee's attending physician do not appear reasonable based upon the submitted clinical record,

- When direct physician-to-physician contact is needed to assess the employee's medical status and any apparent contradictions in the claim record or other medical reports,

- When the treating medical provider states that he/she will only speak with a physician about the employee's treatment or return to work plan.

### Referral Considerations

Prior to utilizing the IPC resource, the CS/CM should have considered seeking resolution to questions by requesting medical information in the following preferred order:

- The attending physician's records,

- Internal resources (medical references, Nurse Consultants, etc.), or

- Specific questions addressed to the employee's attending physician.

The medical information requested may include some, or all, of the following: office notes, test results, hospital records, physical therapy notes, consultant examinations, etc.

> *Prior to initiating a Physician File Review, the CS/CM should consult with the Nurse Consultant to obtain validation of the referral.*

## Determining the Appropriate Resource and Service

The following chart illustrates guidelines for selecting the type of IPC resource in order of preference for the type of referral question or issue.

Metropolitan Life Proprietary & Confidential Information

000068 MetLife Claims Guidelines Palmiotti v MetLife

| On-site IPC | External IPC | Question or Issue, Indicated Below |
|---|---|---|
| 1st | 2nd | Inconsistency in clinical findings, appropriate medical provider type |
| 1st | 2nd | Questions regarding employee's diagnosis |
| 1st | 2nd | Treatment appropriateness or alternatives |
| 1st | 2nd | Duration, time appropriateness, intervention required |
| 1st | 2nd | Need for report Interpretation |
| 1st | 2nd | New diagnosis, same claim |
| 1st | 2nd | Social Security Disability issues |
| 1st | 2nd | Impairment restrictions, limitations |
| 1st | 2nd | Work accommodations |
| 1st | 2nd | Settlement Appropriateness |
| 2nd | 1st | Denial appropriateness |

CONFIDENTIAL

ML0408

## Referral Process for Physician File Reviews

External IPCs are utilized for Physician File Reviews (PFR) in instances where a review of the entire medical and/or claim record is needed to resolve the questions or issues that have been identified. As previously described, the External IPC is considered part of the MetLife Disability Vendor Program.

The following is the process that would be followed by the CS/CM, or other staff member, to initiate a referral for a PFR:

- Determine the need for a PFR.

- Complete the **PFR Referral Form**.

- List the names of documents, including the Document Control Number (DCN), in the designated field on the referral form.

> Note: *If a document to be reviewed contains multiple pages or images, indicate the specific pages or images to be reviewed. If information pertinent to the review is documented in diary memo, "copy and paste" the diary(ies) into the IPC Referral Form.*

- Forward the PFR request, via Lotus Notes, to the Nurse Consultant for validation.

- Enter a diary memo documenting the request for a PFR with a "same day" call-up to the Nurse Consultant.

- The Nurse Consultant reviews the request, including accessing the referenced DCNs in the ACS SIR 2000 system, and either approves or rejects the request.

> **Rejected Requests:** *The Nurse Consultant will return, via Lotus Notes, the PFR Referral Form to the person who initiated the request and document in diary memo the rationale for the decision, including any recommendations for alternate actions. The PFR Referral Form should be printed and placed in the designated area for outgoing correspondence being sent to ACS for imaging. This will ensure that an imaged copy of the referral is associated with the claim.*

- The Nurse Consultant validates the referral by entering his or her name and title in the designated area on the form and forwards the referral form to the Scheduler.

- The Nurse Consultant enters a dairy memo and sets a "same day" call-up to the PFR Scheduler. The diary memo header should state: *"PFR Referral".*

8                                          Metropolitan Life Proprietary & Confidential Information

ML 0409

- The Nurse Consultant enters a diary memo, including rationale, indicating that the PFR request is approved and sets a "same day" call-up to the CS/CM, or other staff member, who initiated the referral.
    - The staff member who initiated the referral should print the claim images and/or photocopy the information that is to be sent to the External IPC. The information should be given to the PFR Scheduler.

- The PFR Scheduler reviews the referral form to ensure that all information has been completed and that the Nurse Consultant has approved the request.

- The PFR Scheduler selects the vendor from an approved vendor listing and adds the vendor name to the referral form.

- The PFR Scheduler enters information into the **Vendor PFR log.** The information entered includes:
    - Employee full name
    - Claim number,
    - Report number
    - Requester Owner ID number
    - Appeal status
    - Date referred to the Scheduler
    - Primary and secondary diagnoses,
    - Vendor name and date of referral to the vendor

- The PFR Scheduler faxes the referral, including the claim information, to the vendor.

- The form is returned, via Lotus Notes, to the individual who initiated the request.
    - The form should be sent to ACS for imaging and association with the claim.

- The PFR Scheduler retains a copy of the referral in a designated Lotus Notes folder for future reference, if necessary.

- The vendor begins processing the request upon receipt.

CONFIDENTIAL

ML 041



**Created By:    Karry Duever/Ins/MetLife/US        Date Created:      12/17/1998**

# Claim Management Guidelines
### 9. Claim Approval Process
### Chapter 1: File Development For Claim Approval
**Effective Date: 07/01/1999**

## Introduction

The claim determination is based upon the employee's abilities and functional limitations as a result of the employee's medical condition in conjunction with the vocational assessment with respect to the plan's definition of disability and other plan provisions (e.g. pre-existing condition limitation). Generally, the employee must have a medical impairment or limitation that prevents him/her from performing his/her occupation (or any occupation if that is the plan requirement). The claim investigation process will result in a determination of approval or denial of benefits based upon this assessment. If the CS/CM determines that a claim can be approved, appropriate documentation should be contained in the claim file to support such determination.

The necessary documentation and format will depend on the specifics of the claim. For claims having less complex issues (e.g. absence within duration control guidelines) information obtained by telephone or submitted with the initial claim forms is sufficient. Other claim situations, such as those with conflicting information (e.g. absence exceeds duration control guidelines) or issues involving other insurance carriers, may require additional investigation and documentation. Often such documentation may need to be obtained in writing. Claims that will result in whole or partial denial of benefits should have written documentation on file to support that determination.

## File Development Standards

In order for the CS/CM to reach a claim determination the following are the minimum requirements for claim development:

- Confirmation of employee eligibility and applicability of any plan limitations. **Coverage Verification**
- Employee diagnosis and or procedure causing the absence from work, including any resulting restrictions. **Medical Review**
- Employee's essential job requirements.
- Relevancy of duration control guidelines to the disability absence.
- Evidence of a functional impairment preventing the employee from performing his or her essential job requirements. **Disability Assessment From the Occupational Standpoint**

1

Metropolitan Life Proprietary & Confidential Information

ML0524



**Created By:    Dondra W Miller/Ins/MetLife/US    Date Created:    11/16/2002**

# Claim Management Guidelines
## 10. Claim Denial or Termination Process
## Chapter 1: Claim Denial or Termination Guidelines

**Effective Date: 12/01/2002**

## Introduction

After conducting a complete claim review and investigation, the CMS may determine that disability benefits should be denied or terminated in accordance with the plan provisions. This section discusses the reasons why claims are denied or terminated, including file development. Employee notification requirements are discussed in a separate chapter.

> *Note: The initial claim determination must be made within 45 days after receiving notice of claim, unless there are special circumstances due to matters beyond the control of the plan that require an extension. If there are special circumstances, two 30-day extensions are permitted, subject to employee timely notification.*

## Reasons for Claim Denial

After the initial claim investigation is completed, a claim which does not meet one or more plan requirements may be denied for benefits. The following will address reasons for which a claim may be denied.

### Eligibility

The employee may be ineligible for coverage for a number of reasons:

- The employee may not be a member of an eligible class of employees
- The disability may have commenced prior to the effective date of coverage
- The employee may not have been properly enrolled for coverage
- The employee may not meet the Actively-at-Work provision

### Pre-existing Condition

Following completion of a pre-existing condition investigation, it is determined that the disabling condition falls within the plan definition of pre-existing. Benefits are denied due to the pre-existing condition plan limitation.

1

Metropolitan Life Proprietary & Confidential Information

ML 0541

In this type of situation, the claim must have documentation, preferably in writing, (i.e., dated medical records) which show that the employee was receiving medical advice or treatment for the condition prior to the effective date of coverage. Plan language should be reviewed for definition of these terms, if present.

Diary memo documentation should include dates of treatment, provider names, hire dates and coverage effective dates, as well as a description of the pre-existing condition limitation for the plan. If there is any question regarding the medical information, the claim should be reviewed by the Nurse Consultant (NC) or other appropriate resource.

## Plan Exclusion

Specifically, the LTD plan excludes coverage for disabilities which result from:

- War,
- Insurrection or rebellion;
- Active participation in a riot;
- Intentionally self-inflicted injuries or attempted suicide
- The commission of a felony.

The STD plan may include additional exclusions for work-related illness or injury, elective procedures and cosmetic surgery.

If the disability results from a plan exclusion benefits may be denied.

*Note: Though an elective procedure, our administrative practice is to cover disabilities resulting from organ donation.*

## Work Related

## Elimination Period Not Satisfied

Most LTD plans require that the employee be continuously disabled for a specified period of time before benefits may be payable. If the employee recovers and returns to work prior to the completion of the Elimination Period the claim will be denied. For STD plans, the same would be true for the STD Waiting Period.

## Insufficient Medical Evidence of Disability

The employee fails to provide or the CMS is unable to obtain sufficient medical evidence to support the claim of disability. Also refer to the information below "definition of disability".

## Definition of Disability

The employee does not meet the definition of disability either because they do not have functional limitations which would prevent the performance of the material duties of their job or because the loss of earnings do not satisfy the amount required by the plan to be considered disabled.

If the claim is denied because the employee does not meet the plan's definition of disability, there should be sufficient medical and vocational information in the file to support the denial of benefits. Generally, this should include a minimum of a detailed job description for the employee as well as

ML0542

medical information regarding the employee's abilities and limitations.

### Refusal to Submit to an Independent Medical Examination

This would also include refusal to attend a Functional Capacity Evaluation.

Although most plans, include a provision that benefits may be denied or terminated due to the employee's refusal to attend a medical examination, the CMS should review each plan's specific language regarding this provision.

### Late Claim Submission

Without adequate explanation of why the claim was submitted after the time period noted in the plan.

### Fraudulent Statements/Misrepresentation

Any claims suspected to be fraudulent or involving material misrepresentations on the part of the employee or other party, should be referred to the Unit Manager and/or Special Investigation Unit for additional investigation. If the misrepresentation involved the Statement of Health form, Medical Underwriting should also be contacted.

### Abandoned Claims/Incomplete Claim Application

The employee does not respond to requests for information regarding their claim for benefits.

Although it is the employee's responsibility to provide information necessary to make a claim determination, the CMS also has a responsibility to communicate to the employee the necessary to make the determination, and if appropriate be pro-active in its submission. The CMS should treat every pending claim with a "sense of urgency" so that initial determinations can be completed within the initial 45-day ERISA time frame and without the need for an extension request. However, as indicated above, if the employee fails to provide the necessary claim information the claim may be denied.

## Reasons for Termination

After benefit payment has commenced on a claim, it may be necessary to terminate benefits based upon plan provisions. This section will address the reasons for which benefit payment may be terminated.

### Return to Work

The employee may return to work and no longer qualify for benefits under the terms of the plan's definition of disability.

Benefits are generally payable through the day *before* an employee returns to work. For example, an employee returns to work on May 10th. Benefits would be paid through May 9th as long as the claim information supported disability through that date.

Metropolitan Life Proprietary & Confidential Information

MLo543

**000075 MetLife Claims Guidelines Palmiotti v MetLife**

The claim should include documentation of the return to work date and the appropriate claim end date and claim end reason should be input in Intellis. The employee should be informed in writing of the date benefits will end.

## Death

Benefits are payable through the employee's date of death.

> **Note:** *In the event the CMS identifies a potential fraudulent situation in which benefit checks have continued to be cashed following the employee's death consideration should be given to referring the matter to the Special Investigation Unit for review.*

If the employee has eligible survivors and the plan provides for survivor benefits, the CMS should take steps to issue survivor benefits, which may be paid as survivor income or survivor lump sum benefits. In this event, a copy of the death certificate should be obtained for claim documentation.

If the employee was receiving Social Security benefits (disability or retirement) at the time of death, the claim must be recalculated because Social Security benefits are not payable for the month in which the employee dies. The CMS should update Intellis to reflect the date of the employee's death, as well as providing the appropriate claim date and reason.

A termination letter should be sent to the employee's family or estate to advise the amount benefits, if any, still due to be paid. If there is a claim overpayment the CMS must notify the Offset Recovery Unit so that appropriate recovery measures may be taken to resolve the overpayment following normal overpayment procedures.

## Definition of Disability No Longer Satisfied

The employee's condition may have improved to the extent that he or she can return to his or her previous employment. At the Any Occupation transition point in the claim, an investigation may reveal that the employee is able to work at other occupations for which they are reasonably qualified per the plan definition.

A claim may also be terminated because the employee *no longer satisfies* the definition of disability either for Own Occupation or Any Occupation. In this case, the CMS should have sufficient claim documentation to support the determination. This may include medical records, narrative reports, Functional Capacity Evaluation and/or Independent Medical Evaluation reports as well as vocational information. If the claim is being terminated at the Any Occupation transition point on the basis that the employee can perform an alternate occupation, results of a Transferable Skills Analysis and/or labor market research should be on file to support the determination.

Once it has been determined that there is insufficient evidence to support continuing disability as defined by the plan, benefits would be allowed up to the date of our determination, but not beyond.

> **Example**
> If an employee is paid on the first of the month and we make your determination decision on the 20th of the month, the payment to the employee would be from the first up to the twentieth, i.e., through the 19th.

4

Metropolitan Life Proprietary & Confidential Information

MLO544

twentieth, i.e., through the 19th.

## Insufficient Evidence to Support Continuing Disability

Despite repeated requests to the employee and/or their attending physician, the CMS is unable to obtain sufficient documentation of continued functional limitations and restrictions that reflect continued disability in accordance with plan provisions. The employee should be advised in writing by regular mail, with a copy to the employer, that we have been unable to obtain the necessary information. Generally, we would allow the employee 10 business days for STD claims and 20 business days for LTD to respond with the necessary information, and advising the employee that benefits may be terminated if the necessary information is not received by the date due.

Intellis diary memo should fully document all attempts to contact the employee and/or other parties for the information and with the subsequent lack of response. The Intellis claim end date and claim end reason should be input to reflect the proper claim status.

Using their discretion, the unit manager or designee, may review the claim to confirm that the CMS decision is correct and supported by the claim's documentation and plan provisions.

Once it has been determined that there is insufficient evidence to support continuing disability as defined by the plan, benefits would be allowed up to the date of our determination, but not beyond. If there is an existing claim overpayment, the employee should be advised that he/she will be responsible for any current overpayment balance.

*Note: If there is an existing overpayment on a terminated claim, the Offset Recovery Unit must be notified so they can initiate the appropriate actions to resolve the overpayment.*

## Refusal to Submit to an Independent Medical Examination

This would also apply to a refusal to attend a scheduled Functional Capacity Evaluation.

Although most plans, include a provision that benefits may be denied or terminated due to the employee's refusal to attend a medical examination, the CMS should review each plan's specific language regarding this provision.

## Lack of Cooperation in Providing Necessary Information

The employee may fail to respond to requests for information, necessary authorizations and/or medical provider information. The same factors and procedures that apply to "Insufficient Evidence to Support Continuing Disability" would apply in this instance.

## Fraudulent Statements/Misrepresentations

Appropriate investigations must be completed to confirm suspicions of fraud and/or misrepresentation. Dependent upon plan provisions, benefits may be terminated in this instance.

## Expiration of the Maximum Benefit Duration Period

Benefits are terminated when the employee reaches the end of the maximum benefit duration period. The employee should be notified at least one month in advance of the maximum benefit duration date.

5

Metropolitan Life Proprietary & Confidential Information

ML0545

Benefits are terminated when the employee reaches the end of the maximum benefit duration period. The employee should be notified at least one month in advance of the maximum benefit duration date.

Maximum benefits are usually payable to:

- Age 65 or
- The Social Security normal retirement age
- A specified number of months based on the plan's ADEA alternatives
- A specified number of months based on the plan's limitation for specific medical conditions

In this case, the CMS should send the termination letter approximately one month in advance of the benefit termination date. This will provide the employee with a reminder that their benefits will be ending shortly. Normally, a copy of this letter is sent to the employer. The CMS should also check Intellis to verify that the claim end date and claim end reason are correct so that the claim will move to a closed status when the final benefit is paid.

> *Note: If the employee is receiving benefits under a limitation provision of the plan, notification should be made two months in advance of the termination date (i.e., during the 22nd month of a 24-month benefit payment period) in order to provide the employee an opportunity to submit any additional information which may be pertinent to the claim. If the employee has developed a concurrent medical condition, the CMS will need to investigate this condition as a cause for continued benefit eligibility prior to terminating benefits.*

**See Model Letter "LTD Claim Termination Based on Plan Limitation"**

## Use of Additional Resources As Part of the Claim Development

Prior to a claim denial or termination, evaluation of claim evidence may require further medical and/or vocational review, if necessary, through the use of resources such as:

- An Independent Physician Consultant or a Physician File Review (PFR) of the claim record.

> *Note: The medical consultant's review should be shared with the employee's attending physician if there is a significant difference in opinion relative to the employee's functionality. This will provide an opportunity for the CMS to obtain more detailed medical/vocational information concerning the issues at hand and potentially resolve the difference in opinion.*

- Functional Capacity Evaluation (FCE).

- Transferable Skill Analysis (TSA) and/or Labor Market research.

- Independent Medical Evaluation (IME)

> *Note: An IME may be considered if there is a significant difference in opinion between the medical consultant and the employee's attending physician regarding the employee's functionality.*

- Field Investigations including, but not limited to, Home Visits and Video Surveillance.

6

Metropolitan Life Proprietary & Confidential Information

MLO546

The CMS should give always give consideration to the referral of the additional medical and/or vocational data obtained by MetLife Disability to the employee's treating provider(s) for the purpose of obtaining further opinion and explanation, and if possible, resolution of any conflict of medical findings or opinion or other claim issues.

In the absence of clinical data indicating the presence or absence of illness or disease, such as in illnesses or conditions that are self-reported in nature, the claim investigation should focus upon and determine the impact of the employee's self-reported symptoms upon functionality. This, in turn, should be evaluated within the context of the plan wording for the definition of "total disability".

The guidelines described above will assist the CMS in reaching a claim determination.

## Considerations Regarding a Claim Denial or Termination Determination

In reaching the claim determination, the CMS is to be guided by the following considerations, as applicable to the claim under review:

- The applicable plan wording relative to the plan provision(s), including but not limited to the definition of "total disability";
- The applicable plan wording relative to limitations and exclusions, including definitions of terms such as "mental/nervous limitation" and/or "pre-existing condition limitation", as well as definitions of medical terms contained in the plan;
- The plan requirement regarding "proof" of disability;
- The plan wording, if present, relative to "care and treatment".

For self-reported diseases and conditions, the CMS must give consideration to the documented impact the employee's subjective complaints or symptoms have upon the functionality of the employee within the context of the plan wording relative to the definition of "total disability".

## Claim Procedures Regarding a Claim Denial or Termination

Should the CMS determine that a claim should be denied or terminated, the following process should be followed:

- The CMS documents the decision rationale in Intellis diary memo.

- Following the ERISA notification requirements, the CMS prepares the denial or termination letter.

- The CMS informs the unit manager, or designee, of the pending claim denial or termination. The unit manager, or designee, reviews the claim to ensure that the determination is appropriate. The CMS would complete any additional claim development, or other actions, identified by the unit manager prior to issuing the denial or termination notice.

*Note: The unit manager may use discretion in waiving this requirement once a CMS has demonstrated competency in this area.*

- The CMS updates the pertinent Intellis windows to place the claim in the proper closure status.

- The unit manager, or designee, reviews the denial or termination letter for content, tone, grammar, sentence structure and typographical errors. The unit manager, or designee, will

7

ML0547

- The unit manager, or designee, reviews the denial or termination letter for content, tone, grammar, sentence structure and typographical errors. The unit manager, or designee, will sign off on the file copy of the letter once approved.

- The CMS mails the denial or termination letter to the employee. The date on the letter should be the same date it is mailed to the employee.

- The CMS notifies any specialty resource that may have involvement in the claim (e.g. Nurse Consultant, Social Security Specialist, etc.) that the claim has been denied or terminated.

- For claims that have a pending Social Security claim at the time of the disability claim's closure, the Social Security Specialist should do the following:
    - Enter a diary memo, with call-up, for the expiration of the disability claim's appeal period to identify if an appeal is submitted.
    - If an appeal is submitted, the Social Security Specialist will monitor the outcome of the appeal. If the disability claim is reinstated, the Social Security Specialist will initiate follow-up regarding the outcome of the prior pending Social Security claim following standard procedures.

- If the claim has an outstanding overpayment at the time of termination, the CMS must notify the Offset Recovery Unit so that they may initiate the appropriate actions to resolve the overpayment.

Metropolitan Life Proprietary & Confidential Information

MLO548

000080 MetLife Claims Guidelines Palmiotti v MetLife



**Created By:** Dondra W Miller/Ins/MetLife/US     **Date Created:** 06/20/2002

**Document Effective From:** 07/01/2002    **To:** 12/02/2002

**Are there prior versions of this document in Archive View?** 

Please refer to the Archive View for prior versions of this document.

# Claim Management Guidelines
## 10. Claim Denial Or Termination Process
### Chapter 1: Claim Denial or Termination Guidelines
#### Effective Date: 07/01/2002

## Introduction

After conducting a complete claim review and investigation, the CS/CM may determine that disability benefits should be denied or terminated in accordance with the plan provisions. This section discusses the reasons why claims are denied or terminated, including file development. Employee notification requirements are discussed in a separate chapter.

> *Note: The initial claim determination must be made within 45 days after receiving notice of claim, unless there are special circumstances due to matters beyond the control of the plan that require an extension. If there are special circumstances, two 30-day extensions are permitted, subject to employee timely notification.*

## Reasons for Claim Denial

After the initial claim investigation is completed, a claim which does not meet one or more plan requirements may be denied for benefits. The following will address reasons for which a claim may be denied.

### Eligibility

The employee may be ineligible for coverage for a number of reasons:

- The employee may not be a member of an eligible class of employees
- The disability may have commenced prior to the effective date of coverage
- The employee may not have been properly enrolled for coverage
- The employee may not meet the Actively-at-Work provision

MLO533

**Pre-existing Condition**

Following completion of a pre-existing condition investigation, it is determined that the disabling condition falls within the plan definition of pre-existing. Benefits are denied due to the pre-existing condition plan limitation.

In this type of situation, the claim must have documentation, preferably in writing, (i.e., dated medical records) which show that the employee was receiving medical advice or treatment for the condition prior to the effective date of coverage. Plan language should be reviewed for definition of these terms, if present.

Diary memo documentation should include dates of treatment, provider names, hire dates and coverage effective dates, as well as a description of the pre-existing condition limitation for the plan. If there is any question regarding the medical information, the claim should be reviewed by the Nurse Consultant (NC) or other appropriate resource.

**Plan Exclusion**

Specifically, the LTD plan excludes coverage for disabilities which result from:

- War,
- Insurrection or rebellion;
- Active participation in a riot;
- Intentionally self-inflicted injuries or attempted suicide
- The commission of a felony.

The STD plan may include additional exclusions for work-related illness or injury, elective procedures and cosmetic surgery.

If the disability results from a plan exclusion benefits may be denied.

> *Note: Though an elective procedure, our administrative practice is to cover disabilities resulting from organ donation.*

**Elimination Period Not Satisfied**

Most LTD plans require that the employee be continuously disabled for a specified period of time before benefits may be payable. If the employee recovers and returns to work prior to the completion of the Elimination Period the claim will be denied. For STD plans, the same would be true for the STD Waiting Period.

**Insufficient Medical Evidence of Disability**

The employee fails to provide or the CS/CM is unable to obtain sufficient medical evidence to support the claim of disability. Also refer to the information below "definition of disability".

**Definition of Disability**

The employee does not meet the definition of disability either because they do not have functional limitations which would prevent the performance of the material duties of their job or because the loss of earnings do not satisfy the amount required by the plan to be considered disabled.

If the claim is denied because the employee does not meet the plan's definition of disability, there

Metropolitan Life Proprietary & Confidential Information

ML-534

should be sufficient medical and vocational information in the file to support the denial of benefits. Generally, this should include a minimum of a detailed job description for the employee as well as medical information regarding the employee's abilities and limitations.

### Refusal to Submit to an Independent Medical Examination

This would also include refusal to attend a Functional Capacity Evaluation.

Although most plans, include a provision that benefits may be denied or terminated due to the employee's refusal to attend a medical examination, the CS/CM should review each plan's specific language regarding this provision.

### Late Claim Submission

Without adequate explanation of why the claim was submitted after the time period noted in the plan.

### Fraudulent Statements/Misrepresentation

Any claims suspected to be fraudulent or involving material misrepresentations on the part of the employee or other party, should be referred to the Unit Manager and/or Special Investigation Unit for additional investigation. If the misrepresentation involved the Statement of Health form, Medical Underwriting should also be contacted.

### Abandoned Claims/Incomplete Claim Application

The employee does not respond to requests for information regarding their claim for benefits.

Although it is the employee's responsibility to provide information necessary to make a claim determination, the CS/CM also has a responsibility to communicate to the employee the necessary to make the determination, and if appropriate be proactive in its submission. The CS/CM should treat every pending claim with a "sense of urgency" so that initial determinations can be completed within the initial 45-day ERISA timeframe and without the need for an extension request. However, as indicated above, if the employee fails to provide the necessary claim information the claim may be denied.

## Reasons for Termination

After benefit payment has commenced on a claim, it may be necessary to terminate benefits based upon plan provisions. This section will address the reasons for which benefit payment may be terminated.

### Return to Work

The employee may return to work and no longer qualify for benefits under the terms of the plan's definition of disability.

Benefits are generally payable through the day *before* an employee returns to work. For example, an employee returns to work on May 10th. Benefits would be paid through May 9th as long as the claim information supported disability through that date.

3                                                    Metropolitan Life Proprietary & Confidential Information

ML0535

> *Note: This may differ for STD plans that are paid on a "5-day" vs. "7-day" payment basis. The CS/CM should reference the plan documents and/or the Plan Master system to verify the benefit payment schedule.*

The claim should include documentation of the return to work date and the appropriate claim end date and claim end reason should be input in Intellis. The employee should be informed in writing of the date benefits will end.

**Death**

Benefits are payable through the employee's date of death.

> *Note: In the event the CS/CM identifies a potential fraudulent situation in which benefit checks have continued to be cashed following the employee's death consideration should be given to referring the matter to the Special Investigation Unit for review.*

If the employee has eligible survivors and the plan provides for survivor benefits, the CS/CM should take steps to issue survivor benefits, which may be paid as survivor income or survivor lump sum benefits. In this event, a copy of the death certificate should be obtained for claim documentation.

If the employee was receiving Social Security benefits (disability or retirement) at the time of death, the claim must be recalculated because Social Security benefits are not payable for the month in which the employee dies. The CS/CM should update Intellis to reflect the date of the employee's death, as well as providing the appropriate claim date and reason.

A termination letter should be sent to the employee's family or estate to advise the amount benefits, if any, still due to be paid. If there is a claim overpayment the CS/CM must notify the Offset Recovery Unit so that appropriate recovery measures may be taken to resolve the overpayment following normal overpayment procedures.

**Definition of Disability No Longer Satisfied**

The employee's condition may have improved to the extent that he or she can return to his or her previous employment. At the Any Occupation transition point in the claim, an investigation may reveal that the employee is able to work at other occupations for which they are reasonably qualified per the plan definition.

A claim may also be terminated because the employee *no longer satisfies* the definition of disability either for Own Occupation or Any Occupation. In this case, the CS/CM should have sufficient claim documentation to support the determination. This may include medical records, narrative reports, Functional Capacity Evaluation and/or Independent Medical Evaluation reports as well as vocational information. If the claim is being terminated at the Any Occupation transition point on the basis that the employee can perform an alternate occupation, results of a Transferable Skills Analysis and/or labor market research should be on file to support the determination.

Once it has been determined that there is insufficient evidence to support continuing disability as defined by the plan, benefits would be allowed up to the date of our determination, but not beyond.

> **Example**
> If an employee is paid on the first of the month and we make oyur determination decision on the 20th of the month, the

4

Metropolitan Life Proprietary & Confidential Information

MLI536

If an employee is paid on the first of the month and we make oyur determination decision on the 20th of the month, the payment to the employee would be from the first up to the twentieth, i.e., through the 19th.

## Insufficient Evidence to Support Continuing Disability

Despite repeated requests to the employee and/or their attending physician, the CS/CM is unable to obtain sufficient documentation of continued functional limitations and restrictions that reflect continued disability in accordance with plan provisions. The employee should be advised in writing by regular mail, with a copy to the employer, that we have been unable to obtain the necessary information. Generally, we would allow the employee 10 business days for STD claims and 20 business days for LTD to respond with the necessary information, and advising the employee that benefits may be terminated if the necessary information is not received by the date due.

Intellis diary memo should fully document all attempts to contact the employee and/or other parties for the information and with the subsequent lack of response. The Intellis claim end date and claim end reason should be input to reflect the proper claim status.

Using their discretion, the unit manager, or designee, may review the claim to confirm that the CS/CM decision is correct and supported by the claim's documentation and plan provisions.

Once it has been determined that there is insufficient evidence to support continuing disability as defined by the plan, benefits would be allowed up to the date of our determination, but not beyond. If there is an existing claim overpayment, the employee should be advised that he/she will be responsible for any current overpayment balance.

*Note: If there is an existing overpayment on a terminated claim, the Offset Recovery Unit must be notified so they can initiate the appropriate actions to resolve the overpayment.*

## Refusal to Submit to an Independent Medical Examination

This would also apply to a refusal to attend a scheduled Functional Capacity Evaluation.

Although most plans, include a provision that benefits may be denied or terminated due to the employee's refusal to attend a medical examination, the CS/CM should review each plan's specific language regarding this provision.

## Lack of Cooperation in Providing Necessary Information

The employee may fail to respond to requests for information, necessary authorizations and/or medical provider information. The same factors and procedures that apply to "Insufficient Evidence to Support Continuing Disability" would apply in this instance.

## Fraudulent Statements/Misrepresentations

Appropriate investigations must be completed to confirm suspicions of fraud and/or misrepresentation. Dependent upon plan provisions, benefits may be terminated in this instance.

## Expiration of the Maximum Benefit Duration Period

5

Metropolitan Life Proprietary & Confidential Information

ML0587

Benefits are terminated when the employee reaches the end of the maximum benefit duration period. The employee should be notified at least one month in advance of the maximum benefit duration date. Maximum benefits are usually payable to:

- Age 65 or
- The Social Security normal retirement age
- A specified number of months based on the plan's ADEA alternatives
- A specified number of months based on the plan's limitation for specific medical conditions

In this case, the CS/CM should send the termination letter approximately one month in advance of the benefit termination date. This will provide the employee with a reminder that their benefits will be ending shortly. Normally, a copy of this letter is sent to the employer. The CS/CM should also check Intellis to verify that the claim end date and claim end reason are correct so that the claim will move to a closed status when the final benefit is paid.

> *Note: If the employee is receiving benefits under a limitation provision of the plan, notification should be made two months in advance of the termination date (i.e., during the 22nd month of a 24-month benefit payment period) in order to provide the employee an opportunity to submit any additional information which may be pertinent to the claim. If the employee has developed a concurrent medical condition, the CS/CM will need to investigate this condition as a cause for continued benefit eligibility prior to terminating benefits.*

**See Model Letter "LTD Claim Termination Based on Plan Limitation"**

## Use of Additional Resources As Part of the Claim Development

Prior to a claim denial or termination, evaluation of claim evidence may require further medical and/or vocational review, if necessary, through the use of resources such as:

- An Independent Physician Consultant or a Physician File Review (PFR) of the claim record.

> *Note: The medical consultant's review should be shared with the employee's attending physician if there is a significant difference in opinion relative to the employee's functionality. This will provide an opportunity for the CS/CM to obtain more detailed medical/vocational information concerning the issues at hand and potentially resolve the difference in opinion.*

- Functional Capacity Evaluation (FCE).

- Transferable Skill Analysis (TSA) and/or Labor Market research.

- Independent Medical Evaluation (IME)

> *Note: An IME may be considered if there is a significant difference in opinion between the medical consultant and the employee's attending physician regarding the employee's functionality.*

Metropolitan Life Proprietary & Confidential Information

ML0538

**000086 MetLife Claims Guidelines Palmiotti v MetLife**

- Field Investigations including, but not limited to, Home Visits and Video Surveillance.

The CS/CM should give always give consideration to the referral of the additional medical and/or vocational data obtained by MetLife Disability to the employee's treating provider(s) for the purpose of obtaining further opinion and explanation, and if possible, resolution of any conflict of medical findings or opinion or other claim issues.

In the absence of clinical data indicating the presence or absence of illness or disease, such as in illnesses or conditions that are self-reported in nature, the claim investigation should focus upon and determine the impact of the employee's self-reported symptoms upon functionality. This, in turn, should be evaluated within the context of the plan wording for the definition of "total disability".

The guidelines described above will assist the CS/CM in reaching a claim determination.

## Considerations Regarding a Claim Denial or Termination Determination

In reaching the claim determination, the CS/CM is to be guided by the following considerations, as applicable to the claim under review:

- The applicable plan wording relative to the plan provision(s), including but not limited to the definition of "total disability";
- The applicable plan wording relative to limitations and exclusions, including definitions of terms such as "mental/nervous limitation" and/or "pre-existing condition limitation", as well as definitions of medical terms contained in the plan;
- The plan requirement regarding "proof" of disability;
- The plan wording, if present, relative to "care and treatment".

For self-reported diseases and conditions, the CS/CM must give consideration to the documented impact the employee's subjective complaints or symptoms have upon the functionality of the employee within the context of the plan wording relative to the definition of "total disability".

## Claim Procedures Regarding a Claim Denial or Termination

Should the CS/CM determine that a claim should be denied or terminated, the following process should be followed:

- The CS/CM documents the decision rationale in Intellis diary memo.

- Following the ERISA notification requirements, the CS/CM prepares the denial or termination letter.

- The CS/CM informs the unit manager, or designee, of the pending claim denial or termination. The unit manager, or designee, reviews the claim to ensure that the determination is appropriate. The CS/CM would complete any additional claim development, or other actions, identified by the unit manager prior to issuing the denial or termination notice.

Note: The unit manager may use discretion in waiving this requirement once a CS/CM has demonstrated competency in this area.

- The CS/CM updates the pertinent Intellis windows to place the claim in the proper closure status.

Metropolitan Life Proprietary & Confidential Information

MLo539

- The unit manager, or designee, reviews the denial or termination letter for content, tone, grammar, sentence structure and typographical errors. The unit manager, or designee, will sign off on the file copy of the letter once approved.

- The CS/CM mails the denial or termination letter to the employee. The date on the letter should be the same date it is mailed to the employee.

- The CS/CM notifies any specialty resource that may have involvement in the claim (e.g. Nurse Consultant, Social Security Specialist, etc.) that the claim has been denied or terminated.

- For claims that have a pending Social Security claim at the time of the disability claim's closure, the Social Security Specialist should do the following:
    - Enter a diary memo, with call-up, for the expiration of the disability claim's appeal period to identify if an appeal is submitted.
    - If an appeal is submitted, the Social Security Specialist will monitor the outcome of the appeal. If the disability claim is reinstated, the Social Security Specialist will initiate follow-up regarding the outcome of the prior pending Social Security claim following standard procedures.

- If the claim has an outstanding overpayment at the time of termination, the CS/CM must notify the Offset Recovery Unit so that they may initiate the appropriate actions to resolve the overpayment.

Metropolitan Life Proprietary & Confidential Information

ML0540



Created By:    Linda Boncek/Ins/MetLife/US        Date Created:        12/29/2001

Document Effective From:    01/01/2002    To:    07/01/2002

Are there prior versions of this document in Archive View?        

Please refer to the Archive View for prior versions of this document.

# Claim Management Guidelines
## 10. Claim Denial Or Termination Process
### Chapter 1: Claim Denial or Termination Guidelines
#### Effective Date: 01/01/2002

## Introduction

After conducting a complete claim review and investigation, the CS/CM may determine that disability benefits should be denied or terminated in accordance with the plan provisions. This section discusses the reasons why claims are denied or terminated, including file development. Employee notification requirements are discussed in a separate chapter.

> *Note: The initial claim determination must be made within 45 days after receiving notice of claim, unless there are special circumstances due to matters beyond the control of the plan that require an extension. If there are special circumstances, two 30-day extensions are permitted, subject to employee timely notification.*

## Reasons for Claim Denial

After the initial claim investigation is completed, a claim which does not meet one or more plan requirements may be denied for benefits. The following will address reasons for which a claim may be denied.

### Eligibility

The employee may be ineligible for coverage for a number of reasons:

- The employee may not be a member of an eligible class of employees
- The disability may have commenced prior to the effective date of coverage
- The employee may not have been properly enrolled for coverage
- The employee may not meet the Actively-at-Work provision

Metropolitan Life Proprietary & Confidential Information

ML0525

## Pre-existing Condition

Following completion of a pre-existing condition investigation, it is determined that the disabling condition falls within the plan definition of pre-existing. Benefits are denied due to the pre-existing condition plan limitation.

In this type of situation, the claim must have documentation, preferably in writing, (i.e., dated medical records) which show that the employee was receiving medical advice or treatment for the condition prior to the effective date of coverage. Plan language should be reviewed for definition of these terms, if present.

Diary memo documentation should include dates of treatment, provider names, hire dates and coverage effective dates, as well as a description of the pre-existing condition limitation for the plan. If there is any question regarding the medical information, the claim should be reviewed by the Nurse Consultant (NC) or other appropriate resource.

## Plan Exclusion

Specifically, the LTD plan excludes coverage for disabilities which result from:

- War,
- Insurrection or rebellion;
- Active participation in a riot;
- Intentionally self-inflicted injuries or attempted suicide
- The commission of a felony.

The STD plan may include additional exclusions for work-related illness or injury, elective procedures and cosmetic surgery.

If the disability results from a plan exclusion benefits may be denied.

> Note: Though an elective procedure, our administrative practice is to cover disabilities resulting from organ donation.

## Elimination Period Not Satisfied

Most LTD plans require that the employee be continuously disabled for a specified period of time before benefits may be payable. If the employee recovers and returns to work prior to the completion of the Elimination Period the claim will be denied. For STD plans, the same would be true for the STD Waiting Period.

## Insufficient Medical Evidence of Disability

The employee fails to provide or the CS/CM is unable to obtain sufficient medical evidence to support the claim of disability. Also refer to the information below "definition of disability".

## Definition of Disability

The employee does not meet the definition of disability either because they do not have functional limitations which would prevent the performance of the material duties of their job or because the loss of earnings do not satisfy the amount required by the plan to be considered disabled.

Metropolitan Life Proprietary & Confidential Information

MLO526

If the claim is denied because the employee does not meet the plan's definition of disability, there should be sufficient medical and vocational information in the file to support the denial of benefits. Generally, this should include a minimum of a detailed job description for the employee as well as medical information regarding the employee's abilities and limitations.

### Refusal to Submit to an Independent Medical Examination

This would also include refusal to attend a Functional Capacity Evaluation.

Although most plans, include a provision that benefits may be denied or terminated due to the employee's refusal to attend a medical examination, the CS/CM should review each plan's specific language regarding this provision.

### Late Claim Submission

Without adequate explanation of why the claim was submitted after the time period noted in the plan.

### Fraudulent Statements/Misrepresentation

Any claims suspected to be fraudulent or involving material misrepresentations on the part of the employee or other party, should be referred to the Unit Manager and/or Special Investigation Unit for additional investigation. If the misrepresentation involved the Statement of Health form, Medical Underwriting should also be contacted.

### Abandoned Claims/Incomplete Claim Application

The employee does not respond to requests for information regarding their claim for benefits.

Although it is the employee's responsibility to provide information necessary to make a claim determination, the CS/CM also has a responsibility to communicate to the employee the necessary to make the determination, and if appropriate be proactive in its submission. The CS/CM should treat every pending claim with a "sense of urgency" so that initial determinations can be completed within the initial 45-day ERISA timeframe and without the need for an extension request. However, as indicated above, if the employee fails to provide the necessary claim information the claim may be denied.

## Reasons for Termination

After benefit payment has commenced on a claim, it may be necessary to terminate benefits based upon plan provisions. This section will address the reasons for which benefit payment may be terminated.

### Return to Work

The employee may return to work and no longer qualify for benefits under the terms of the plan's definition of disability.

Benefits are generally payable through the day *before* an employee returns to work. For

3                                                   Metropolitan Life Proprietary & Confidential Information

MLo527

Benefits are generally payable through the day *before* an employee returns to work. For

example, an employee returns to work on May 10th. Benefits would be paid through May 9th as long as the claim information supported disability through that date.

> *Note: This may differ for STD plans that are paid on a "5-day" vs. "7-day" payment basis. The CS/CM should reference the plan documents and/or the Plan Master system to verify the benefit payment schedule.*

The claim should include documentation of the return to work date and the appropriate claim end date and claim end reason should be input in Intellis. The employee should be informed in writing of the date benefits will end.

### Death

Benefits are payable through the employee's date of death.

> *Note: In the event the CS/CM identifies a potential fraudulent situation in which benefit checks have continued to be cashed following the employee's death consideration should be given to referring the matter to the Special Investigation Unit for review.*

If the employee has eligible survivors and the plan provides for survivor benefits, the CS/CM should take steps to issue survivor benefits, which may be paid as survivor income or survivor lump sum benefits. In this event, a copy of the death certificate should be obtained for claim documentation.

If the employee was receiving Social Security benefits (disability or retirement) at the time of death, the claim must be recalculated because Social Security benefits are not payable for the month in which the employee dies. The CS/CM should update Intellis to reflect the date of the employee's death, as well as providing the appropriate claim date and reason.

A termination letter should be sent to the employee's family or estate to advise the amount benefits, if any, still due to be paid. If there is a claim overpayment the CS/CM must notify the Offset Recovery Unit so that appropriate recovery measures may be taken to resolve the overpayment following normal overpayment procedures.

### Definition of Disability No Longer Satisfied

The employee's condition may have improved to the extent that he or she can return to his or her previous employment. At the Any Occupation transition point in the claim, an investigation may reveal that the employee is able to work at other occupations for which they are reasonably qualified per the plan definition.

A claim may also be terminated because the employee *no longer satisfies* the definition of disability either for Own Occupation or Any Occupation. In this case, the CS/CM should have sufficient claim documentation to support the determination. This may include medical records, narrative reports, Functional Capacity Evaluation and/or Independent Medical Evaluation reports as well as vocational information. If the claim is being terminated at the Any Occupation transition point on the basis that the employee can perform an alternate occupation, results of a Transferable Skills Analysis and/or labor market research should be on file to support the determination.

Once it has been determined that there is insufficient evidence to support continuing disability as defined by the plan, benefits would be allowed up to the date of our determination, but not beyond.

4

Metropolitan Life Proprietary & Confidential Information

ML0528

*Example*
If an employee is paid on the first of the month and we make oyur determination decision on the 20th of the month, the payment to the employee would be from the first up to the twentieth, I.e., through the 19th.

## Insufficient Evidence to Support Continuing Disability

Despite repeated requests to the employee and/or their attending physician, the CS/CM is unable to obtain sufficient documentation of continued functional limitations and restrictions that reflect continued disability in accordance with plan provisions. The employee should be advised in writing by regular mail, with a copy to the employer, that we have been unable to obtain the necessary information. Generally, we would allow the employee 10 business days for STD claims and 20 business days for LTD to respond with the necessary information, and advising the employee that benefits may be terminated if the necessary information is not received by the date due.

Intellis diary memo should fully document all attempts to contact the employee and/or other parties for the information and with the subsequent lack of response. The Intellis claim end date and claim end reason should be input to reflect the proper claim status.

Using their discretion, the unit manager, or designee, may review the claim to confirm that the CS/CM decision is correct and supported by the claim's documentation and plan provisions.

Once it has been determined that there is insufficient evidence to support continuing disability as defined by the plan, benefits would be allowed up to the date of our determination, but not beyond. If there is an existing claim overpayment, the employee should be advised that he/she will be responsible for any current overpayment balance.

*Note: If there is an existing overpayment on a terminated claim, the Offset Recovery Unit must be notified so they can initiate the appropriate actions to resolve the overpayment.*

## Refusal to Submit to an Independent Medical Examination

This would also apply to a refusal to attend a scheduled Functional Capacity Evaluation.

Although most plans, include a provision that benefits may be denied or terminated due to the employee's refusal to attend a medical examination, the CS/CM should review each plan's specific language regarding this provision.

## Lack of Cooperation in Providing Necessary Information

The employee may fail to respond to requests for information, necessary authorizations and/or medical provider information. The same factors and procedures that apply to "Insufficient Evidence to Support Continuing Disability" would apply in this instance.

## Fraudulent Statements/Misrepresentations

Appropriate investigations must be completed to confirm suspicions of fraud and/or
5   misrepresentation. Dependent upon plan provisions, benefits may be terminated in this Confidential Information

ML0529

Appropriate investigations must be completed to confirm suspicions of fraud and/or misrepresentation. Dependent upon plan provisions, benefits may be terminated in this instance.

**Expiration of the Maximum Benefit Duration Period**

Benefits are terminated when the employee reaches the end of the maximum benefit duration period. The employee should be notified at least one month in advance of the maximum benefit duration date. Maximum benefits are usually payable to:

- Age 65 or
- The Social Security normal retirement age
- A specified number of months based on the plan's ADEA alternatives
- A specified number of months based on the plan's limitation for specific medical conditions

In this case, the CS/CM should send the termination letter approximately one month in advance of the benefit termination date. This will provide the employee with a reminder that their benefits will be ending shortly. Normally, a copy of this letter is sent to the employer. The CS/CM should also check Intellis to verify that the claim end date and claim end reason are correct so that the claim will move to a closed status when the final benefit is paid.

> *Note: If the employee is receiving benefits under a limitation provision of the plan, notification should be made two months in advance of the termination date (i.e., during the 22nd month of a 24-month benefit payment period) in order to provide the employee an opportunity to submit any additional information which may be pertinent to the claim. If the employee has developed a concurrent medical condition, the CS/CM will need to investigate this condition as a cause for continued benefit eligibility prior to terminating benefits.*

**See Model Letter "LTD Claim Termination Based on Plan Limitation"**

## Use of Additional Resources As Part of the Claim Development

Prior to a claim denial or termination, evaluation of claim evidence may require further medical and/or vocational review, if necessary, through the use of resources such as:

- An Independent Physician Consultant or a Physician File Review (PFR) of the claim record.

> *Note: The medical consultant's review should be shared with the employee's attending physician if there is a significant difference in opinion relative to the employee's functionality. This will provide an opportunity for the CS/CM to obtain more detailed medical/vocational information concerning the issues at hand and potentially resolve the difference in opinion.*

- Functional Capacity Evaluation (FCE).

- Transferable Skill Analysis (TSA) and/or Labor Market research.

- Independent Medical Evaluation (IME)

> *Note: An IME may be considered if there is a significant difference in opinion between the information*

6

ML0530

- Field Investigations including, but not limited to, Home Visits and Video Surveillance.

The CS/CM should give always give consideration to the referral of the additional medical and/or vocational data obtained by MetLife Disability to the employee's treating provider(s) for the purpose of obtaining further opinion and explanation, and if possible, resolution of any conflict of medical findings or opinion or other claim issues.

In the absence of clinical data indicating the presence or absence of illness or disease, such as in illnesses or conditions that are self-reported in nature, the claim investigation should focus upon and determine the impact of the employee's self-reported symptoms upon functionality. This, in turn, should be evaluated within the context of the plan wording for the definition of "total disability".

The guidelines described above will assist the CS/CM in reaching a claim determination.

## Considerations Regarding a Claim Denial or Termination Determination

In reaching the claim determination, the CS/CM is to be guided by the following considerations, as applicable to the claim under review:

- The applicable plan wording relative to the plan provision(s), including but not limited to the definition of "total disability";
- The applicable plan wording relative to limitations and exclusions, including definitions of terms such as "mental/nervous limitation" and/or "pre-existing condition limitation", as well as definitions of medical terms contained in the plan;
- The plan requirement regarding "proof" of disability;
- The plan wording, if present, relative to "care and treatment".

For self-reported diseases and conditions, the CS/CM must give consideration to the documented impact the employee's subjective complaints or symptoms have upon the functionality of the employee within the context of the plan wording relative to the definition of "total disability".

## Claim Procedures Regarding a Claim Denial or Termination

Should the CS/CM determine that a claim should be denied or terminated, the following process should be followed:

- The CS/CM documents the decision rationale in Intellis diary memo.

- Following the ERISA notification requirements, the CS/CM prepares the denial or termination letter.

- The CS/CM informs the unit manager, or designee, of the pending claim denial or termination. The unit manager, or designee, reviews the claim to ensure that the determination is appropriate. The CS/CM would complete any additional claim development, or other actions, identified by the unit manager prior to issuing the denial or termination notice.

[7] *Note: The unit manager may use discretion in waiving this requirement once a CS/CM has* MetLife Proprietary and Confidential Information

ML0531

- The CS/CM updates the pertinent Intellis windows to place the claim in the proper closure status.

- The CS/CM mails the denial or termination letter to the employee. The date on the letter should be the same date it is mailed to the employee.

- The CS/CM notifies any specialty resource that may have involvement in the claim (e.g. Nurse Consultant, Social Security Specialist, etc.) that the claim has been denied or terminated.

- For claims that have a pending Social Security claim at the time of the disability claim's closure, the Social Security Specialist should do the following:
    - Enter a diary memo, with call-up, for the expiration of the disability claim's appeal period to identify if an appeal is submitted.
    - If an appeal is submitted, the Social Security Specialist will monitor the outcome of the appeal. If the disability claim is reinstated, the Social Security Specialist will initiate follow-up regarding the outcome of the prior pending Social Security claim following standard procedures.

- If the claim has an outstanding overpayment at the time of termination, the CS/CM must notify the Offset Recovery Unit so that they may initiate the appropriate actions to resolve the overpayment.

Metropolitan Life Proprietary & Confidential Information

ML0532



Created By:    Dondra W Miller/Ins/MetLife/US      Date Created:      02/24/2003

# Claim Management Guidelines
## 10. Claim Denial or Termination Process
### Chapter 3: Appeal Process
Effective Date: 03/01/2003

## Introduction

Each office has an Appeals Unit whose primary function is to conduct reviews of claims when an appeal has been received concerning MetLife Disability's claim determination. The staff in the Appeals Units report to an Appeals Manager and have no reporting relationship to the claim unit who would be responsible for making the original claim adverse determination.

To track the receipt of appeals and ensure that ERISA time standards are met, a separate Post Office Box has been established for appeal submissions. The CMS provides the employee with this address when the denial/termination letter is sent.

Appeals are tracked by the Appeals Unit for timeliness and resolution through the utilization of an appeals database. The following information is tracked for reporting purposes and trend analysis:

- Number of appeals received by location
- Number of claim reinstatement upon appeal by the CMS
- Number of appeal upholds by the Appeals Specialist
- Number of reinstatements by the Appeal Specialist
- Cycle time for appeal resolution


**Appeals Unit Generic Diary Work Queues**
To facilitate communication to the Appeals Unit, office specific generic appeals work queues are in place. They are noted below:
- Glastonbury - APGL
- Utica - APUT
- Synchrony - APSY

**Appeals Post Office Box Address**
The address used for appeal submissions is noted below:

*MetLife Disability*
*PO Box 14592*
*Lexington, KY 40511-4592*

      Metropolitan Life Proprietary & Confidential Information

ML0556

## Appeal Submissions

An appeal offers the employee an administrative remedy to have an adverse benefit determination reviewed by an independent party. The appeal also offers the employee an opportunity to provide additional information or information that was omitted or unavailable at the time the claim determination was made. In summary, an appeal provides the employee with the opportunity to:

- Request a review of the claim decision and provide the information to "perfect" the claim to merit approval.
- Review relevant documents upon which MetLife relied upon when rendering the claim determination or were generated in the course of the claim.
- Submit issues and comments in writing.

ERISA allows plans to set a time limit for appeal submission, however it can not be less than 180 days after receipt of the written denial notice. The CMS should review the Plan to determine if a time limit other than 180 days is specified.

Appeals should be submitted in writing within the time period allowed - within 180 days of the denial or termination notice. If the CMS receives a telephone appeal request, the caller should be instructed to submit a written request for the administrative review in accordance with ERISA guidelines. The CMS should send a letter to the caller confirming the telephone conversation.

The CMS should accept any appeal that is received by the claim office within *190 days* from the date the denial / termination letter was sent to the employee. This 190 day period provides a five (5) day mail time allowance on either side of the 180 day period.

The following would be considered appeal requests:

- Written requests from the employee.

- Written requests from an attorney or the claimant's representative.

> *Note: Information sent directly from a physician is not generally considered an appeal; the employee would need to provide written rationale as to why he or she believes our decision was incorrect and request a review of the claim. If the physician indicates that he is writing on behalf of his patient regarding our denial, we should still solicit a written appeal request from the employee.*

### Untimely Appeals

If an appeal is submitted untimely (i.e., over the 190 day timeframe), the CMS should evaluate the particular claim's circumstances to determine if there was a valid reason why the appeal could not have been submitted timely.

**Model Letter " Untimely Appeal Conditional Acceptance to Employee"**

## ERISA Regulations and Timeframes for the Appeal Determination

Each ERISA Plan must establish a process by which the employee, or his duly authorized representative, has a reasonable opportunity to appeal a claim which is denied (wholly or partially) and under which a full and fair review of the claim and its denial may be obtained. The ERISA information is provided in the certificate or plan booklet.

For additional information concerning the ERISA requirements, refer to the chapter that discusses the **"Employee Retirement Income Security Act of 1974."**

  Metropolitan Life Proprietary & Confidential Information

MC0557

Appeal reviews may not be conducted by someone who has adjudicated, previously reviewed the claim, or is a subordinate of those individuals. The Appeals Specialists have the primary function of reviewing appeals for MetLife Disability.

**Appeal Determination**
The appeal review determination must be made promptly by MetLife, ordinarily *no later than 45 days* after receipt of a request for review, unless special circumstances require an extension of time for processing the appeal. If additional time is necessary, a final appeal determination shall be made no later than 90 days after receipt of a request for review. If no decision is made after 45 days and *no* notice of extension of time is given to the employee by MetLife *prior* to the expiration of the 45-day period, the claim denial is deemed upheld on review.

**Appeal Determination Extension**
If there are special circumstances that prevent the Appeal Specialist from making the appeal determination within the initial 45-day review period, 45-day extension is permitted. The Appeal Specialist is to send the employee written notice of the need for the extension prior to the expiration of the initial 45-day review period. The notice must specifically describe the special circumstances that constitute the reason for the extension.

**See Model Letter "Notice of Appeal Determination Extension to Employee."**

## Appeal Process

The following describes the process that occurs when an appeal is received by the claim office.

**Registering the Appeal**
When an appeal is received, the documents are processed and imaged by Affiliated Computer Services (ACS) following the mail processing protocols established. Appeal documents are categorized under the image index category of "Other". A diary memo, with call-up, is generated to the claim Owner ID.

When reviewing this information, the CMS will also register the appeal in the appeal database. This database is utilized for tracking the number and resolution of appeals.

**Appeal Acknowledgment**
Upon receipt of an appeal request, the CMS will review the appeal for submission timeliness and send the appropriate acknowledgment letter. The appropriate employer contact should be copied on the appeal acknowledgment letter that is sent to the employee. Refer to the prior section regarding appeals submitted untimely.

*Note: Time standards for initial appeal review and acknowledgment is one (1) to two (2) business days from receipt of appeal in the appeal department.*

e
**See Model Letter "Appeal Acknowledgment No Additional Information Expected."**

If the employee indicates in the appeal request letter that additional information is forthcoming, the CMS must advise the employee in the acknowledgment letter that he/she has 10 business days to submit this information. The CMS should enter a diary memo with a 10 business day call-up indicating that the appeal has been received and additional information will be forthcoming. The CMS

Metropolitan Life Proprietary & Confidential Information

ML 0558

should retain the claim for the 10 day period. If the information is not received by that date, the claim may be referred to the Appeals Unit, with a diary memo entered as documentation of the referral.

**See Model Letter "Appeal Acknowledgment Additional
Information Expected"**

## CMS Reversal of Original Decision

Upon receipt of the appeal the CMS should review the claim and any information that was submitted with the appeal request. If new information was submitted and the CMS now recommends that the original decision be reversed, the file should not be referred to the Appeal Unit for review.

Instead, the CMS should refer the claim to the unit manager, or designee, with the recommendation that the claim now be approved or the original decision reversed.

If the unit manager, or designee, concurs with the decision, the CMS may reverse the original determination and initiate payment of any benefits due.

*Note: For reporting purposes, the CMS will need to notify the Appeals Unit that the appeal was received and the original determination reversed at the CMS level. This may be done by registering the claim and/or updating the appeal database.*

## CMS Upholds Original Decision - Referral to the Appeals Unit

Should the CMS determine that the original decision was correct, the following process should be followed:

- The claim will be referred to the unit manager, or designee, for review. With the approval of the unit manager, or designee, the claim will be sent to the Appeals Unit for the appeal review. The unit manager may use discretion in waiving this requirement once a CMS has demonstrated competency in this area.

- The CMS should enter a diary memo documenting that the claim is being referred to the Appeals Unit.

*Note: Appeal requests must be referred to the Appeals Unit within five (5) business days, unless the employee is requesting additional time to submit information. In such cases, if the CMS will not be reinstating the claim the referral should be done within one (1) business day of receipt of the additional information.*

*Note: All paper claims that are referred to the Appeals Unit must be organized in chronological order with all documents secured in the claim folder. The certificate, or other Plan documents, must be sent with the claim file. Claim files not properly prepared will be returned to the CMS by the Appeals Specialist.*

- During the appeal review, if the Appeals Specialist determines that information necessary to reach the appeal determination must be requested, the Appeals Specialist will defer the claim back to the CMS with a diary memo call-up to both the CMS and Unit Manager.

Metropolitan Life Proprietary & Confidential Information

ML 0559

- The Appeals Specialist must also update the appeals database with the appeal deferral information.

> **Note:** The CMS is expected to complete any recommended claim development by the Appeals Specialist within 10 business days.

- If the CMS reverses the original claim determination as a result of the additional development, the Appeals Unit *must* be notified of the reinstatement date. The CMS must also update the appeals database with the reinstatement information.

- In rare cases, the CMS may require additional time to complete recommended claim development. To extend the development time period beyond the standard 10 business days, the CMS is required to forward, via diary memo, a detailed action plan with projected completion date to the Appeals Specialist.

- If additional and extensive claim development is necessary, the Appeals Specialist may recommend claim reinstatement.

- The CMS should review any new information submitted during the appeal review and determine if it will alter the CMS's original decision. If there will not be a change, the information should be forwarded, via a diary memo call-up, *within one (1) business day of CMS receipt* to the Appeals Unit so it can be evaluated as part of the appeal review.

> **Note:** If the new information now supports a reversal of the original determination, the decision reversal by the CMS process should be followed. To ensure accurate appeal tracking it is essential that the Appeals Unit be notified of such outcomes and the appeals database updated accordingly.

- If the original claim denial or termination was based upon "medical judgment", the Appeal Specialist must have the claim reviewed by a medical specialist with expertise in the field of medicine involved in the medical judgment. For example, if a "medical judgment" was made regarding a disability claim where the employee was claiming disability due to a pulmonary condition, the medical specialist who reviews the claim during the appeal should have expertise in pulmonary medicine. MetLife Disability has available resources who are board certified physicians or licensed clinicians in a variety of medical specialties who may conduct such reviews.

> **Note:** Prior to making a referral to a "medical specialist" the Appeals Specialist should note if the claim was previously reviewed by a physician consultant, etc. If so, the review conducted as part of the appeal must be done by a different medical specialist and one that is not the subordinate of the medical specialist who had done the prior review or consultation. In addition to our independent physicians consultants, the psychiatric clinicians in the Behavior Health Unit would fulfill the requirements to be considered a "medical specialist".

- Upon completion of the appeal review, the Appeals Specialist should enter a diary memo documenting the determination upon review, with rationale for the decision.

## Appeals Specialist Determination Upon Review

In conducting the appeal review, the Appeals Specialist must adhere to the following requirements:

- Conduct a review of the entire claim, and
- Make an independent decision regarding whether the claim should be approved or reinstated.

        Metropolitan Life Proprietary & Confidential Information

MLO560

**Reversal of Original Decision**

If the Appeals Specialist determines that the decision should be reversed, the Appeals Specialist will document the determination in a diary memo with a diary memo call-up to the Unit Manager. The Unit Manager should review the rationale and enter a diary memo with next business day call-up to the CMS as notification for claim reinstatement. It will be the CMS's responsibility to send a letter to the employee notifying him or her of the claim reinstatement or decision reversal. The CMS would also need to update Intellis to initiate payment of any benefits due to the employee.

See Model Letter "Notice of Claim Reinstatement Upon Appeal to Employee."

**Uphold of the Original Decision**

Should the Appeals Specialist determine that the original decision should be upheld, in additional to documenting the determination in a diary memo, the Appeals Specialist will be responsible for drafting the response to the employee. This determination letter also advise the employee that no further appeals will be considered, **unless the Plan specifies otherwise.** The following section discusses the notification requirements if the original denial or termination is upheld upon appeal.

> Note:  Any questions regarding an appeal determination should be directed to the Appeals Manager.

The appeals database must also be updated to reflect the appeal determination.

> Note: Whenever a claim is reinstated upon the appeal review, the CMS should confirm the status of a pending Social Security claims before recalculating the sability claim for any retroactive benefits.  This will prevent an overpayment on the disability claim/

## Appeal Uphold Notification Requirements

Notification of an adverse determination upon appeal must:

- Be in writing,
- Include specific reasons for the determination,
- Be written in a manner calculated to be understood by the employee,
- Must include specific references to the pertinent plan provisions on which the decision is based, and
- Comply with ERISA notification requirements.

For detailed information concerning the notification requirements, refer to the chapter that discusses the "**Employee Retirement Income Act of 1974**".

> Note:  Some Plans offer an additional appeal option whereby the employee may direct an appeal to another party after MetLife's uphold decision, such as to the Plan Administrator.  If this is the case, the Appeals Specialist conducting the appeal must describe the Plan's procedures for the additional appeal in the closing wording of the uphold letter.

See Model Letter "Claim Denial Upheld on Appeal."

Metropolitan Life Proprietary & Confidential Information

ML0561



**Created By:    Linda Boncek/Ins/MetLife/US        Date Created:    12/29/2001**

**Document Effective From:    01/01/2002    To:    03/01/2003**

**Are there prior versions of this document in Archive View?**     

**Please refer to the Archive View for prior versions of this document.**

# Claim Management Guidelines
## 10. Claim Denial Or Termination Process
### Chapter 3: Appeal Process
#### Effective Date: 01/01/2002

## Introduction

Each office has an Appeals Unit whose primary function is to conduct reviews of claims when an appeal has been received concerning MetLife Disability's claim determination. The staff in the Appeals Units report to an Appeals Manager and have no reporting relationship to the claim unit who would be responsible for making the original claim adverse determination.

To track the receipt of appeals and ensure that ERISA time standards are met, a separate Post Office Box has been established for appeal submissions. The CS/CM provides the employee with this address when the denial/termination letter is sent.

Appeals are tracked by the Appeals Unit for timeliness and resolution through the utilization of an appeals database. The following information is tracked for reporting purposes and trend analysis:

- Number of appeals received by location
- Number of claim reinstatement upon appeal by the CS/CM
- Number of appeal upholds by the Appeals Specialist
- Number of reinstatements by the Appeal Specialist
- Cycle time for appeal resolution

**Appeals Unit Generic Diary Work Queues**
To facilitate communication to the Appeals Unit, office specific generic appeals work queues are in place. They are noted below:
- Atlanta - APAT
- Glastonbury - APGL
- Mt. Prospect - APMP
- Utica - APUT
- Synchrony - APSY

**Appeals Post Office Box Address**
The address used for appeal submissions is noted below:

MetLife Disability
PO Box 14592
Lexington, KY 40511-4592

## Appeal Submissions

An appeal offers the employee an administrative remedy to have an adverse benefit determination reviewed by an independent party. The appeal also offers the employee an opportunity to provide additional information or information that was omitted or unavailable at the time the claim determination was made. In summary, an appeal provides the employee with the opportunity to:

- Request a review of the claim decision and provide the information to "perfect" the claim to merit approval.
- Review relevant documents upon which MetLife relied upon when rendering the claim determination or were generated in the course of the claim.
- Submit issues and comments in writing.

ERISA allows plans to set a time limit for appeal submission, however it can not be less than 180 days after receipt of the written denial notice. The CS/CM should review the Plan to determine if a time limit other than 180 days is specified.

Appeals should be submitted in writing within the time period allowed - within 180 days of the denial or termination notice. If the CS/CM receives a telephone appeal request, the caller should be instructed to submit a written request for the administrative review in accordance with ERISA guidelines. The CS/CM should send a letter to the caller confirming the telephone conversation.

The CS/CM should accept any appeal that is received by the claim office within *190 days* from the date the denial / termination letter was sent to the employee. This 190 day period provides a five (5) day mail time allowance on either side of the 180 day period.

The following would be considered appeal requests:

- Written requests from the employee.

- Written requests from an attorney or the claimant's representative.

> *Note: Information sent directly from a physician is not generally considered an appeal; the employee would need to provide written rationale as to why he or she believes our decision was incorrect and request a review of the claim. If the physician indicates that he is writing on behalf of his patient regarding our denial, we should still solicit a written appeal request from the employee.*

### Untimely Appeals
If an appeal is submitted untimely (i.e., over the 190 day timeframe), the CS/CM should evaluate the particular claim's circumstances to determine if there was a valid reason why the appeal could not have been submitted timely.

**Model Letter " Untimely Appeal Conditional Acceptance to Employee"**

## ERISA Regulations and Timeframes for the Appeal Determination

ML0560

Each ERISA Plan must establish a process by which the employee, or his duly authorized representative, has a reasonable opportunity to appeal a claim which is denied (wholly or partially) and under which a full and fair review of the claim and its denial may be obtained. The ERISA information is provided in the certificate or plan booklet.

For additional information concerning the ERISA requirements, refer to the chapter that discusses the "Employee Retirement Income Act of 1974".

Appeal reviews may not be conducted by someone who has adjudicated, previously reviewed the claim, or is a subordinate of those individuals. The Appeals Specialists have the primary function of reviewing appeals for MetLife Disability.

**Appeal Determination**
The appeal review determination must be made promptly by MetLife, ordinarily *no later than 45 days* after receipt of a request for review, unless special circumstances require an extension of time for processing the appeal. If additional time is necessary, a final appeal determination shall be made no later than 90 days after receipt of a request for review. If no decision is made after 45 days and *no* notice of extension of time is given to the employee by MetLife *prior* to the expiration of the 45-day period, the claim denial is deemed upheld on review.

**Appeal Determination Extension**
If there are special circumstances that prevent the Appeal Specialist from making the appeal determination within the initial 45-day review period, 45-day extension is permitted. The Appeal Specialist is to send the employee written notice of the need for the extension prior to the expiration of the initial 45-day review period. The notice must specifically describe the special circumstances that constitute the reason for the extension.

**See Model Letter "Notice of Appeal Determination Extension to Employee"**

## Appeal Process

The following describes the process that occurs when an appeal is received by the claim office.

**Registering the Appeal**
When an appeal is received, the documents are processed and imaged by Affiliated Computer Services (ACS) following the mail processing protocols established. Appeal documents are categorized under the image index category of "Other". A diary memo, with call-up, is generated to the claim Owner ID.

When reviewing this information, the CS/CM will also register the appeal in the appeal database. This database is utilized for tracking the number and resolution of appeals.

**Appeal Acknowledgment**
Upon receipt of an appeal request, the CS/CM will review the appeal for submission timeliness and send the appropriate acknowledgment letter. The appropriate employer contact should be copied on the appeal acknowledgment letter that is sent to the employee. Refer to the prior section regarding appeals submitted untimely.

*Note:  Time standards for initial appeal review and acknowledgment is one (1) business day.*

3

Metropolitan Life Proprietary & Confidential Information

ML 0551

e

### See Model Letter "Appeal Acknowledgment No Additional Information Expected"

If the employee indicates in the appeal request letter that additional information is forthcoming, the CS/CM must advise the employee in the acknowledgment letter that he/she has 10 business days to submit this information. The CS/CM should enter a diary memo with a 10 business day call-up indicating that the appeal has been received and additional information will be forthcoming. The CS/CM should retain the claim for the 10 day period. If the information is not received by that date, the claim may be referred to the Appeals Unit, with a diary memo entered as documentation of the referral.

### See Model Letter "Appeal Acknowledgment Additional Information Expected"

### CS/CM Reversal of Original Decision

Upon receipt of the appeal the CS/CM should review the claim and any information that was submitted with the appeal request. If new information was submitted and the CS/CM now recommends that the original decision be reversed, the file should not be referred to the Appeal Unit for review.

Instead, the CS/CM should refer the claim to the unit manager, or designee, with the recommendation that the claim now be approved or the original decision reversed.

If the unit manager, or designee, concurs with the decision, the CS/CM may reverse the original determination and initiate payment of any benefits due.

*Note: For reporting purposes, the CS/CM will need to notify the Appeals Unit that the appeal was received and the original determination reversed at the CS/CM level. This may be done by registering the claim and/or updating the appeal database.*

### CS/CM Upholds Original Decision - Referral to the Appeals Unit

Should the CS/CM determine that the original decision was correct, the following process should be followed:

- The claim will be referred to the unit manager, or designee, for review. With the approval of the unit manager, or designee, the claim will be sent to the Appeals Unit for the appeal review. The unit manager may use discretion in waiving this requirement once a CS/CM has demonstrated competency in this area.

- The CS/CM should enter a diary memo documenting that the claim is being referred to the Appeals Unit.

*Note: Appeal requests must be referred to the Appeals Unit within five (5) business days, unless the employee is requesting additional time to submit information. In such cases, if the CS/CM will not be reinstating the claim the referral should be done within one (1) business day of receipt of the additional information.*

Metropolitan Life Proprietary & Confidential Information

ML0552

- During the appeal review, if the Appeals Specialist determines that information necessary to reach the appeal determination must be requested, the Appeals Specialist will defer the claim back to the CS/CM with a diary memo call-up to both the CS/CM and Unit Manager.
  - The Appeals Specialist must also update the appeals database with the appeal deferral information.

> **Note:** The CS/CM is expected to complete any recommended claim development by the Appeals Specialist within 10 business days.

- If the CS/CM reverses the original claim determination as a result of the additional development, the Appeals Unit *must* be notified of the reinstatement date. The CS/CM must also update the appeals database with the reinstatement information.

- In rare cases, the CS/CM may require additional time to complete recommended claim development. To extend the development time period beyond the standard 10 business days, the CS/CM is required to forward, via diary memo, a detailed action plan with projected completion date to the Appeals Specialist.

- If additional and extensive claim development is necessary, the Appeals Specialist may recommend claim reinstatement.

- The CS/CM should review any new information submitted during the appeal review and determine if it will alter the CS/CM's original decision. If there will not be a change, the information should be forwarded, via a diary memo call-up, *within one (1) business day of CS/CM receipt* to the Appeals Unit so it can be evaluated as part of the appeal review.

> **Note:** If the new information now supports a reversal of the original determination, the decision reversal by the CS/CM process should be followed. To ensure accurate appeal tracking it is essential that the Appeals Unit be notified of such outcomes and the appeals database updated accordingly.

- If the original claim denial or termination was based upon "medical judgment", the Appeal Specialist must have the claim reviewed by a medical specialist with expertise in the field of medicine involved in the medical judgment. For example, if a "medical judgment" was made regarding a disability claim where the employee was claiming disability due to a pulmonary condition, the medical specialist who reviews the claim during the appeal should have expertise in pulmonary medicine. MetLife Disability has available resources who are board certified physicians or licensed clinicians in a variety of medical specialties who may conduct such reviews.

> **Note:** Prior to making a referral to a "medical specialist" the Appeals Specialist should note if the claim was previously reviewed by a physician consultant, etc. If so, the review conducted as part of the appeal must be done by a different medical specialist and one that is not the subordinate of the medical specialist who had done the prior review or consultation. In addition to our independent physicians consultants, the psychiatric clinicians in the Behavior Health Unit would fulfill the requirements to be considered a "medical specialist".

- Upon completion of the appeal review, the Appeals Specialist should enter a diary memo documenting the determination upon review, with rationale for the decision.

    Metropolitan Life Proprietary & Confidential Information

ML 6553

## Appeals Specialist Determination Upon Review

In conducting the appeal review, the Appeals Specialist must adhere to the following requirements:

- Conduct a review of the entire claim, and
- Make an independent decision regarding whether the claim should be approved or reinstated.

### Reversal of Original Decision

If the Appeals Specialist determines that the decision should be reversed, the Appeals Specialist will document the determination in a diary memo with a diary memo call-up to the Unit Manager. The Unit Manager should review the rationale and enter a diary memo with next business day call-up to the CS/CM as notification for claim reinstatement. It will be the CS/CM's responsibility to send a letter to the employee notifying him or her of the claim reinstatement or decision reversal. The CS/CM would also need to update Intellis to initiate payment of any benefits due to the employee.

See Model Letter "Notice of Claim Reinstatement Upon Appeal to Employee"

### Uphold of the Original Decision

Should the Appeals Specialist determine that the original decision should be upheld, in additional to documenting the determination in a diary memo, the Appeals Specialist will be responsible for drafting the response to the employee. This determination letter also advise the employee that no further appeals will be considered, unless the Plan specifies otherwise. The following section discusses the notification requirements if the original denial or termination is upheld upon appeal.

> Note: Any questions regarding an appeal determination should be directed to the Appeals Manager.

The appeals database must also be updated to reflect the appeal determination.

> Note: Whenever a claim is reinstated upon the appeal review, the CS/CM should confirm the status of a pending Social Security claims before recalculating the sability claim for any retroactive benefits. This will prevent an overpayment on the disability claim/

## Appeal Uphold Notification Requirements

Notification of an adverse determination upon appeal must:

- Be in writing,
- Include specific reasons for the determination,
- Be written in a manner calculated to be understood by the employee,
- Must include specific references to the pertinent plan provisions on which the decision is based, and
- Comply with ERISA notification requirements.

For detailed information concerning the notification requirements, refer to the chapter that discusses the "Employee Retirement Income Act of 1974".

> Note: Some Plans offer an additional appeal option whereby the employee may direct an appeal to another party after MetLife's uphold decision, such as to the Plan Administrator. If this is the case, the

Metropolitan Life Proprietary & Confidential Information

ML0554

Appeals Specialist conducting the appeal must describe the Plan's
procedures for the additional appeal in the closing wording of the uphold
letter.

**See Model Letter "Claim Denial Upheld on Appeal"**

Metropolitan Life Proprietary & Confidential Information

ML0555